Lee E. TARVESTAD, Appellant,

v.

UNITED STATES of America,
Appellee.

George A. WYUM, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19110, 19111.

United States Court of Appeals
Eighth Circuit.

Dec. 10, 1969.

Certiorari Denied Feb. 27, 1970.
See 90 S.Ct. 944.

Lyle E. Huseby, Fargo, N. D., for appellant Tarvestad.

Robert Vogel, Mandan, N. D., for appellant Wyum.

Kermit Edward Bye, Sp. Asst. U. S. Atty., Fargo, N. D., for appellee.

Before VAN OOSTERHOUT, Chief Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendants were convicted under a 22-count indictment which included five counts of mail fraud in violation of 18 U.S.C. § 1341, ten counts of fraud in the sale of securities in violation of 15 U.S. C. § 77q(a), six counts of selling securities without registering them with the SEC in violation of 15 U.S.C. § 77e, and one count of conspiracy in violation of 18 U.S.C. § 371. Trial lasted for six weeks, 65 witnesses appeared for the government, five for the defendant Tarvestad and nine for the defendant Wyum. Over 400 exhibits were admitted into evidence. After the jury verdict the trial court, the Honorable Ronald N. Davies, sentenced both defendants to the custody of the Attorney General for a period of eighteen months with five years probation to follow on each and every count, the sentence to run concurrently. This appeal followed. We affirm.

The charges arose out of the sale of unregistered securities issued by Dalco American Enterprises, Inc., a North Dakota corporation; Dalco American Mortgage, a division of Dalco American Enterprises; and Continental Mortgage Company, a wholly owned subsidiary of Dalco American Enterprises. The sales, which took place over a period extending from January of 1963 to October of 1964 were made to approximately 470 investors in North Dakota, South Dakota, Minnesota and Iowa.

Lee Tarvestad became president of Dalco American Enterprises, Inc. (hereinafter Dalco) in 1961 and chairman of the board of directors in 1963. George Wyum, began working for Dalco as a salesman in 1962, and later became its vice president. The two defendants were the company's largest stockholders. Under their management the corporation expanded from the sale of lumber into the prefabrication of wall sections for homes and the construction of commercial buildings. They also set up a franchise system of dealerships, providing small contractors with architectural assistance, pricing information, guaranteed pricing and technical assistance.

In January of 1963 the defendants organized Dalco American Mortgage, with a separate downtown office, and sold 6½% and later, 7% demand notes. Passbooks and signature cards were used. A large part of the sales campaign was launched through the mails, although both television and radio advertisements were also used. These promotional activities and a prepared brochure assured potential buyers that a large capital reserve insured by the federal government would be maintained. It was also represented that the investments would be protected by first mortgages, and that all the assets and resources of Dalco American would stand behind them. Employees who sold the notes were instructed to state that a

40% reserve would be maintained. For a period from February to August of 1963, a reserve of $24,000 was maintained, although this was far less than the promised 40%. However, even this was eventually liquidated.

The second major revenue producing effort involved the sale of Dalco common stock at $2.25 a share with a promise of later repurchase at $3. Purchasers were told that their stock was made available for sale by the death of an officer of the corporation. In actuality the stock had not been previously issued. The defendants had in fact previously bought the stock of the deceased officer from his estate at $1 a share.

The final arrangement, implemented as the financial condition of Dalco worsened, involved the sale of fractional interests in the first mortgages of Continental. These sales by Continental were in large part conducted by mail. Brochures promised that money invested would be backed by first mortgages and that money could be withdrawn at any time. Many investors received only "ghost" mortgages which did not actually represent any interest in real estate.

Many of these sales were made at a time when the corporation was no longer solvent. Nevertheless, throughout the period all published financial information was done so as to give the appearance of financial health and solvency. On October 26, 1964, Dalco filed a voluntary bankruptcy petition under Chapter XI with the defendants included in the list of debtors-in-possession. When this was unsuccessful the corporation was adjudicated a bankrupt on June 11, 1965.

Throughout this period no registration statement was ever filed for any of the securities sales. On at least two occasions the defendants were informed by an SEC inspector that such action was necessary. Sales continued, in four states, at the defendants' direction. Before withdrawals of $204,634, $1,072,511 had been invested in the three companies.

The basic defense urged by Tarvestad was that he was mentally incompetent throughout the period covered by the indictments. The defendant Wyum asserted that the collapse of Dalco was an honest business failure and that he at all times acted in good faith.

 Under the concurrent sentence rule as long as a conviction is proper upon at least one count, it will support the judgment. Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959). The concurrent sentence rule is still viable where prejudice does not patently appear, see Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and collateral legal consequences are remote, Kauffmann v. United States, 414 F.2d 1022, 1024 (8 Cir.1969). We have explored the entire record and the multitude of contentions made by defendants and find no prejudicial error. Under the concurrent sentence rule we confine our written discussion to the six counts of selling securities without registration with the SEC in violation of 15 U.S.C. § 77e.

*Instructions*

The basic complaints related to nonregistration are premised upon defendants' exception to the instructions. Defendants assert that the trial court (1) failed to emphasize the requirement of "willfullness" in order to sustain a criminal violation of 15 U.S.C. § 77e; (2) failed to instruct upon the defense of "good faith"; (3) failed to instruct upon "evil motive" as a necessary proof to sustain conviction; (4) failed to properly instruct as to "advice of counsel"; (5) failed to properly instruct as to what is a "security"; (6) failed to properly instruct on "reasonable doubt"; and (7) failed to give defendant's requested instruction as to the proper consideration to be given Wyum's prior conviction of a felony.

 In order to sustain a criminal prosecution under § 77e(a) it must be shown that the acts were done "willfully." 15 U.S.C. § 77x. The district court

instructed that the government must prove five elements:

"A sale of a security as charged.

"That the subject of the sale was a security within the terms of the Securities Act of 1933.

"That the mails were used for delivery of a security after sale as charged in the indictment.

"That the security was not registered with the Securities and Exchange Commission at the time the mails were used.

"That the defendant under consideration committed the above-described acts willfully."

See United States v. Abrams, 357 F.2d 539, 546 (2 Cir.1966); Kistner v. United States, 332 F.2d 978, 981 (8 Cir. 1964).

■ The Supreme Court has pointed out that the term "willful" is a word with many connotations and that its particular use governs its particular construction. Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed 418 (1943); cf. United States v. Benjamin, 328 F.2d 854, 862 (2 Cir.1964). Some courts, including this circuit, have held or at least intimated, that the term "willful" under a § 77e(a) et seq. violation requires only evidence to establish that a defendant intentionally sold or delivered unregistered securities by use of the mails. It has been held that actual knowledge that a security was being sold in violation of the law is not a necessary element absent a charge of fraud. See e. g., United States v. Sussman, 37 F. Supp. 294 (E.D.Pa.1941); Loss, Securities Reg. 1309–12 (2d ed. 1961); cf. Kistner v. United States, 332 F.2d 978 (8 Cir.1964). Contrary holdings exist. See e. g., United States v. Crosby, 294 F.2d 928 (2 Cir.1961), which requires evidence of guilty knowledge on the part of defendants. Some courts have held as in United States v. Dardi, 330 F.2d 316 (2 Cir.1964), that the instructions and proof submitted were broad enough to satisfy either test. Without retreat-ing from the dictum of *Kistner,* we find this case to be on all fours with the *Dardi* case. The trial court instructed:

"An act is done 'willfully' if it is done knowingly and deliberately with bad purpose. In determining whether a defendant has acted willfully, however, it is not necessary for the government to show that any defendant knew he was breaking any particular law.

"Knowledge and willfulness of a defendant need not be proved by direct evidence, and, like any other fact in issue, may be established by circumstantial evidence. Here, as in other phases of this case, the significant fact is the defendant's state of mind."

The court gave an instruction that good faith was a complete defense to all charges; it also gave a proper instruction that the "advice of counsel" rule was to be considered as a factor in determining good faith. When these instructions are considered with the above instruction as to willfulness and "bad purpose" they adequately set out any requirement for evil motive or guilty knowledge. "Evil motive" and "bad purpose" are words of equivalent meaning. Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

■ Objection was also made that the court's instruction on advice of counsel required the jury to find the extraneous element of good faith of the attorney consulted. We think this is an artificial construction. Nor can we accept the proposition that legal advice itself under all circumstances constitutes complete immunity. As said in Linden v. United States, 254 F.2d 560, 568 (4 Cir. 1958):

"To hold otherwise would be to say that no matter how violative of law a defendant's conduct may be, and regardless of consciousness of wrongdoing on his part and his adviser's, the advice confers immunity. No such doctrine has been given legal sanction."

Objection is made as to the trial court giving an "over balance" of "government instructions" as compared to requested "defense instructions." The record, however, demonstrates that the defendant requested six different instructions pertaining to nonregistration and that all six instructions were given by the court. Further objection is made that the court failed to emphasize the requirement of willfulness and the defense of "good faith" in each of the counts. Some of the instructions of which defendant complains, however, incorporate by reference the five elements required to be proven by the government, as previously set forth. These elements include the necessity of proof of "willfulness." The instructions also set forth that good faith was a complete defense. When the instructions are considered as a whole, we find no prejudice or error in the emphasis or lack of emphasis of either government or defense theories.

■ Additionally, defendants contend that shares or partial assignment of mortgages are not "securities" under § 77e. They excepted to the portion of the trial court's instruction on securities that stated that the term "participation in a profits sharing agreement" is self-explanatory. Without a further specific request of definition, the court's instruction in the language of the statute (§ 77b) is sufficient. See Rimerman v. United States, 374 F.2d 251 (8 Cir. 1967); Williams v. United States, 328 F.2d 256, 262 (8 Cir. 1964). The court submitted the question to the jury as to whether the partial assignments of mortgages were within the act. Under the circumstances surrounding their sale, we have no difficulty in approving the submission of the question to the jury.

■ Counsel further objects to the rejection of their request as to the proper consideration to be given to the defendant Wyum's prior conviction of a felony. The government during trial offered proof that Wyum had been convicted on a state charge in North Dakota for selling securities without a license. At the time this was offered the trial court properly limited the jury's consideration of this evidence to that of affecting credibility of the defendant. The court's failure to repeat this instruction at the close of the case was not prejudicial error. Cf. Franano v. United States, 310 F.2d 533, 539 (8 Cir. 1962); Troutman v. United States, 100 F.2d 628, 634 (10 Cir. 1939).

■ However, defendant asserts that the trial court affirmatively instructed upon this conviction with erroneous language. The court did instruct in part as follows:

"If the jury should find beyond a reasonable doubt from the other evidence in the case that the accused did the acts charged in the indictment, then the jury may consider evidence as to an alleged earlier offense, in determining the state of mind or intent with which the accused did the acts charged in the indictment."

The government urges that the trial court was referring to evidence of other securities sales not specifically alleged as counts in the indictment. We have held that where intent and knowledge are essential elements of an offense, evidence of acts similar in nature and closely related in time to those in the indictment are admissible to prove intent and guilty knowledge. See Von Feldt and Inland Oil Co. v. United States, 407 F.2d 95 (8 Cir. 1969).

The problem here, as pointed out by defendant's counsel in his oral exception, is that the instruction could be interpreted to apply to Wyum's prior conviction. Under the language used, without further clarification, we find the instruction erroneous. However, in view of the prior limiting instruction and in consideration of the overwhelming evidence of guilt on Wyum's part, we hold the error to be harmless, having no substantial effect upon the jury.

■ Defendant also asserts error in the trial court's instruction that "[t]here is nothing peculiarly different in the

manner in which a jury is to consider the proof in a criminal case from that in which all reasonable persons treat any question depending upon evidence presented to them." Defendant maintains that this is inconsistent with the requirement that in a criminal case the evidence must be such so as to prove guilt beyond a reasonable doubt. We must agree. The instruction has no legal foundation and should not have been given.

However, the trial court did instruct the jury that all elements of the offenses charged must be proven beyond a reasonable doubt. The court repeated this several times. In weighing the prejudicial effect of the above instruction we are not faced with the singular application of a different standard to a specific element of the offense in contrast to the other elements to be proven. Cf. Stump v. Bennett, 398 F.2d 111 (8 Cir. 1968). Here the instruction is given generally and at best lends some ambiguity without further reference. However, once again viewing the record as a whole, we find the asserted error insubstantial and the verdict and judgment must stand. Kotteakos v. United States, 328 U.S 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■■■■ Defendant also excepts to many evidentiary rulings and comments of the trial court. We have examined these in detail and find no basis of prejudicial error. There is no complaint as to the sufficiency of the evidence to support a conviction on any of the counts. Nor could there be. The evidence, as we have briefly summarized, clearly shows guilt on all counts. There is no showing here that the trial court at any time "calculated to disparage" the defense in the eyes of the jury. Cf. Goldstein v. United States, 63 F.2d 609 (8 Cir. 1933); Woodring v. United States, 311 F.2d 417 (8 Cir. 1963); United States v. Spica, 413 F.2d 129 (8 Cir. 1969). Throughout a long trial such as this there are bound to be errors along the way. However, the law, as has been stated many times, does not require a perfect trial. Prejudice must be shown as arising from such errors, prejudice to the extent that it may be said that it reasonably could influence a trier of fact as a determinant in decision. Not every error requires reversal. See Wright v. United States, 389 F.2d 996 (8 Cir. 1968). Under the record of this case, we fail to find any evidentiary ruling or trial conduct by the court or government which compels reversal.

*Fifth Amendment Issue.*

■■ Before trial, defendants were required to testify over objection, before the referee in bankruptcy as to certain incriminating facts. The trial court ruled "any evidence adduced during the hearing before the Referee Dim as to which Mr. Wyum claimed a personal privilege under the Fifth Amendment, irrespective of whether he was required to answer or not, to be inadmissible." Defendant Wyum complains that he was denied the right to call the United States Attorney for the purpose of developing which evidence taken from the bankruptcy proceeding had been used before the grand jury. Defendant relies upon Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

It has been consistently held that grand jury consideration of evidence obtained from illegal origins does not render the indictment defective. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); West v. United States, 359 F.2d 50 (8 Cir.1966). As stated in United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966):

"Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial."

If on the other hand the contention relates to tainted evidence to be used at trial, as under *Nardone*, the proper objection is required. However, no motion to suppress any specific evidence was ever made at trial. And even assuming the proper objection to have been made, the record affirmatively demonstrates that the government was not relying upon any evidence given by the defendant at the bankruptcy hearing, but upon independent books and records of the banks and of the corporation.

### The Jencks Act Issue.

Defense counsel also maintain that government statements determined by the trial court to be non-obtainable by the defendant, should have been produced under the Jencks Act. 18 U.S.C. § 3500.

 The Jencks Act has been construed to include the "interview report", which is largely a rearrangement of earlier notes adopted by the witness. See Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). However, summaries of oral statements which were prepared after the interview without the aid of complete notes and which rest on the memory of the agent are not to be produced nor are statements that contain the agent's interpretations or impressions. See Palermo v. United States, 360 U.S. 343, 352–353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); United States v. Aviles, 337 F.2d 552 (2 Cir. 1964).

 The trial court examined the statements *en camera*. These same statements (sealed for review here by the trial court) are in large part interviews taken by SEC agents of purchasers who were defrauded. It is readily apparent that many of these statements are incomplete. Furthermore, it must be noted that few of them were typed on the day of the interview. Viewing these documents as a whole it is evident the trial judge did not err in refusing production of all memorandums. A great many statements were produced voluntarily by the government. In any event, none of the statements withheld are relevant to the nonregistration charges, and would therefore otherwise fall within the harmless error rule as to the counts under consideration. See Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); Killian v. United States, 368 U.S. 231, 243–244, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); Cline v. United States, 395 F.2d 138 (8 Cir. 1968).

### Tarvestad's Defense: Mental Incompetency.

This brings us to the defense raised singularly by Tarvestad. Tarvestad asserts error in that (1) judgment of acquittal should have been entered because the government failed to prove the defendant's sanity beyond a reasonable doubt in its case in chief; (2) the overall evidence affirmatively failed to show that defendant was sane and competent at the time of the alleged violations; and (3) the court should have instructed the jury that if the defendant was acquitted by reason of insanity that he would be confined in a hospital for the insane as long as the public safety and welfare required it.[1]

 Although defendant was confined and examined prior to trial in the Federal Medical Center pursuant to 18 U.S.C. § 4244, there was never an adjudication of mental incompetency. It is well settled that the presumption of sanity controls until some evidence to rebut the presumption is offered by *the defendant*. When this occurs the government is then required to prove legal sanity beyond a reasonable doubt. Davis v. United States, 160 U.S. 469, 486, 16 S.Ct. 353, 40 L.Ed. 499 (1895); Dusky v.

---

1. We need not discuss this contention, beyond citation of Pope v. United States, 372 F.2d 710 (8 Cir. 1967). We there pointed out this practice is peculiar to the District of Columbia under District of Columbia Code 24.301. See also Alexander v. United States, 380 F.2d 33 (8 Cir.1967).

United States, 295 F.2d 743, 754 (8 Cir. 1961). The burden is not otherwise shifted unless there has been an adjudication of incompetency prior to trial. See Hurt v. United States, 327 F.2d 978 (8 Cir. 1964); Ashley v. Pescor, 147 F.2d 318 (8 Cir. 1945). Defendant relies upon United States v. Currens, 290 F.2d 751 (3 Cir. 1961). Assuming *Currens* holds to the contrary, a viewpoint we do not share, the case is nevertheless distinguishable in that Currens at one time had been adjudicated incompetent before trial.

 Tarvestad challenges the foundation as to the admissibility of the government psychiatrist's testimony that defendant was competent at the time of the alleged offenses. The record shows that the government doctor saw the defendant on but one occasion and defendant urges that this was insufficient to establish a basis of opinion. Defendant relies upon Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959). However, *Winn* must be considered in light of Jones v. United States, 109 U.S.App.D.C. 111, 284 F.2d 245 (1960) and Carey v. United States, 111 U.S.App.D.C. 300, 296 F.2d 422 (1961). Where opinion is based upon an examination not limited in scope, the testimony may be admitted. Here the government doctor was familiar with the psychiatric and psychological data gathered from tests throughout the period of November 29, 1966 to February 1967. He had studied the reports of doctors who had examined the defendant during that time. His examination was not limited to the determination of competency to stand trial. Under the circumstances we find the court did not err in admitting the doctor's opinion; defendant's complaints relate to credibility not admissibility.

 Beyond the expert opinion offered, there exists substantial evidence of Tarvestad's conduct throughout the period involved. Lay witnesses verified Tarvestad's mannerisms and characteristics including his speech and conversations, his letters, reports and overall ability to competently deal in business operations. Cf. Dusky v. United States, 295 F.2d 743, 757 (8 Cir. 1961); Mason v. United States, 402 F.2d 732 (8 Cir. 1968). Under standards we have previously discussed the evidence of competency was properly submitted to the jury. See cases collected in Iyotte v. United States, 402 F.2d 698 (8 Cir. 1968) and United States v. Leeper, 413 F.2d 123 (8 Cir. 1969).

Judgments of convictions affirmed.