**414**

Jack E. MILLER et al., Appellants,

v.

CENTRAL CHINCHILLA GROUP, INC., (a/k/a The Central Chinchilla Group, Inc., The Central Chinchilla Group of America, Inc., Central Chinchilla Groups of America, Inc., The Central Chinchilla Guild of America, Inc., Central Chinchilla Guild of America, Inc., and Central Chinchilla Group) (Hereinafter Referred to as Central Chinchilla Group, Inc.), et al., Appellees.

No. 73-1731.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1974.

Decided March 28, 1974.

James E. Shipman, Cedar Rapids, Iowa, for appellants.

Michael P. Donohue, Robert E. Konchar, Mayer & Bergman, Cedar Rapids, Iowa, for appellees.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and SMITH, Senior District Judge.*

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

HEANEY, Circuit Judge.

The sole issue on this appeal is whether the District Court erred in holding that certain contracts for sale of chinchillas were not investment contracts subject to the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq.

The plaintiffs' initiated a class action in the Southern District of Iowa against the chinchilla corporations and individual defendants in March of 1971. The plaintiffs complained that because of material misrepresentations and omissions, they were persuaded to enter into contracts [1] with the chinchilla corporations under which those firms sold chinchillas to the plaintiffs at prices many times in excess of their true market value. The plaintiffs agreed to raise and breed these chinchillas in accordance with the corporations' directions. The chinchilla corporations agreed to repurchase the offspring for $100.00 per pair. The plaintiffs maintain, in part, that they were misinformed by the defendants that it was a simple task to raise chinchillas and that the venture would be highly profitable. They assert that in reality, chinchillas are difficult to raise and have a high mortality rate. More importantly, they contend that the market for chinchillas is such that the venture could return the promised profits only if the defendants repurchased the offspring at the $100.00 price and, in turn, resold them to other prospective chinchilla raisers at an inflated price. Thus, they assert, in essence, that the defendants were operating a pyramiding scheme under which profits could be made by the plaintiffs only if the defendants were successful in encouraging new victims to buy into the scheme.

The plaintiffs claimed that these contracts for the sale of chinchillas were investment contracts [2] and as such were sold in violation of the registration and antifraud provisions of the Securities Act of 1933 [3] and § 10(b) of the Securities Exchange Act of 1934,[4] Rule 10b–5 [5] and common law.

In an amendment to the complaint filed in May of 1973, the plaintiffs added the Mills County State Bank as a de-

---

1. The contracts read as follows:

CENTRAL CHINCHILLA GROUP, INC. AGREES:

1. To buy all descendants of the chinchillas purchased from Central Chinchilla Group, Inc., on date of ——————— (Said descendants shall be in pairs . . . a pair being one male and one female, or two females.)

2. To pay the sum of One Hundred Dollars ($100.00) per pair for said offspring.

PREFERRED PRODUCER AGREES:

1. That all offspring sold to Central Chinchilla Group, Inc., shall be between six and eleven months of age.

2. To sell 100% of his offspring, with the exception that he may choose, at his option, to keep his offspring or a certain percentage of the offspring, for his herd expansion, in which case selection shall be on the basis of one offspring selected by the Producer, then one offspring selected by The Group, etc.

3. To give reasonable care, at all times, to The Central Chinchilla Group strain of breeding stock, and to abstain from introducing any outside stock.

4. To maintain membership in The Central Chinchilla Group and to manage his herd according to recommendations made by The Group.

5. That only clean animals in smooth condition and in normal good health will be involved under the terms of this agreement.

6. That all chinchillas involved shall have been first registered at the home office of Central Chinchilla Group, Inc., through birth announcements, and tagged by an authorized representative of Central Chinchilla Group, Inc., as animals meeting the breeding standards established by Central Chinchilla Group, Inc.

2. The term "security" as defined under both the Securities Act of 1933 and the Securities Exchange Act of 1934 includes "investment contracts." 15 U.S.C. §§ 77b(1) and 78c(a)(10). The definitions in these statutes are virtually identical. Tcherepnin v. Knight, 389 U.S. 332, 335–336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

3. 15 U.S.C. §§ 77e, 77*l*(2), 77q.

4. 15 U.S.C. § 78j(b).

5. 17 C.F.R. § 240.10b–5.

fendant. The plaintiffs asserted that the Bank was acting in concert with the defendants to defraud them and that it aided and abetted in the violations of the securities laws.

The Bank filed a motion to dismiss asserting that the plaintiffs had failed to state a claim upon which relief could be granted because the contract for the sale of chinchilla animals and a promise to purchase their offspring is not a security under the provisions of either the 1933 or 1934 acts. Other motions not here relevant were also filed.

The District Court treated the Bank's motion to dismiss as a motion for summary judgment. It held that the contracts in question were not investment contracts because they were "clearly not passive investment interests." It concluded that summary judgment for the defendants was appropriate

> * * * since the sole basis for the Court's exercise of subject matter jurisdiction over these securities law violations are 15 U.S.C. §§ 77v, 78aa, both of which are premised upon the existence of securities and which are thus inapplicable since no security is herein involved.

The court reasoned that the plaintiffs' efforts in raising the chinchillas were so important to the success or failure of the venture that characterization of the contracts as investment contracts would be improper under the Supreme Court's definition of that term in Securities & Exch. Com. v. Howey Co., 328 U.S. 293, 298–301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The court declined to consider the common law claims as they were premised on pendent jurisdiction and the court had found it did not have subject matter jurisdiction over the federal claims.

We consider the fundamental question before us—whether the contracts were investment contracts and hence securities subject to the federal securities laws —in the context of a dismissal for lack of subject matter jurisdiction. *See*, 10

Wright & Miller, Federal Practice and Procedure § 2713, at 402–406 (1973).

The starting point in this determination is the Supreme Court's definition in *Howey*:

> * * * [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. * * *

*Id.*, 328 U.S. at 298–299, 66 S.Ct. at 1103.

The Ninth Circuit recently held that the word "solely" should not be read as a strict or literal limitation on the definition of an investment contract. Securities & Exchange Com'n v. Glenn W. Turner Ent., Inc., 474 F.2d 476 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). It stated:

> * * * [I]n light of the remedial nature of the legislation, the statutory policy of affording broad protection to the public, and the Supreme Court's admonitions that the definition of Securities should be a flexible one, the word "solely" should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities. * * *

> * * * Thus the fact that the investors here were required to exert some efforts if a return were to be achieved should not automatically preclude a finding that the Plan or Adventure is an investment contract. * * * Rather we adopt a more realistic test, *whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which af-*

*fect the failure or success of the enterprise.* (Emphasis supplied.)

*Id.* at 482.

We are convinced that the definition of investment contract in *Turner* is consistent with congressional intent and that it does not represent an impermissible departure from the Supreme Court's holding in *Howey*.[6]

The District Court recognized the teachings of Turner but was apparently convinced that the plaintiffs' efforts were so substantial that even under the *Turner* test the chinchilla contracts were not investment contracts.

██ We have reviewed the record[7] in the light of the principle that all doubts on jurisdictional points must be resolved in favor of a plenary trial rather than dismissal at the pretrial stage. *See,* Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969). We are convinced from this review that it was inappropriate for the District Court to have concluded at the pretrial stage that the contracts were not investment contracts.

The record shows that the plaintiffs invested money in a common enterprise with the expectation that they would profit if the defendants secured additional investors.[8] It also shows that the plaintiffs would not profit from the venture unless they exerted efforts in raising the chinchillas. But this fact does not preclude the conclusion that they had entered into investment contracts because the plaintiffs have alleged: (1) that the defendants persuaded them to invest by representing that the efforts required of them would be very minimal; and (2) that if they did diligently exert themselves, they still would not gain the promised profits because those profits could be achieved under the scheme only if the defendants secured additional investors at the inflated prices. If these allegations are true, and we must so assume here, the defendants by their own actions have admitted that the plaintiffs' contributions to the scheme were nominal, and what the plaintiffs really purchased was the defendants' skill at persuading others to become chinchilla raisers.

██ In determining whether the plaintiffs' contributions were nominal or significant, the issue is not what efforts, in fact, were required of them. Rather, it is what efforts the plaintiffs were reasonably led to believe were required of them at the time they entered into the contracts. *See,* Securities & Exch. Comm. v. Joiner Leasing Corp., 320 U.S. 344, 353, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943), where the Court, in finding an investment contract subject to the Securities Act of 1933, stated:

In the enforcement of an act such as this it is not inappropriate that the promoters' offering be judged as being what they were represented to be.

Viewed in this context, it becomes apparent that the plaintiffs' efforts in raising the chinchillas are really of no more significance to the venture's ultimate success than were the efforts of the investors in *Turner*. There, the

---

6. *See also,* Lino v. City Investing Co., 487 F.2d 689, 692–693 (3rd Cir. 1973), where the Third Circuit stated:

* * * [A]n investment contract can exist where the investor is required to perform some duties, as long as they are nominal or limited and would have "little direct effect upon receipt by the participant of the benefits promised by the promoters." * * * As the Ninth Circuit realized, to adopt a position similar to City Investing's would lead to easy evasion of the act "by adding a requirement that the buyer contribute a modicum of effort." (Citations omitted.)

7. The record before the District Court consisted of pleading, interrogatories, answers to interrogatories, and the affidavit of an official of the Bank and his testimony at a pretrial hearing. Only the pleadings, the interrogatories and the answers to the interrogatories relate to the question before us.

8. *See,* 51 Texas L.Rev. 788 (1973) and 6 Creighton L.Rev. 450 (1973), where the elements of the *Howey* formula are summarized and investment contract cases are analyzed.

investor to profit had to contribute three things: "his money, his effort to find prospects and bring them to the meetings, and whatever it costs him to create an illusion of his own affluence." Securities & Exchange Com'n v. Glenn W. Turner Ent., Inc., *supra*, 474 F.2d at 482. Here, the investors had to contribute two things: his money and his efforts in raising the chinchillas. The latter contribution is alleged to have been represented as being minimal. In both cases, the investor's profit was dependent upon the defendants' efforts to persuade additional persons to invest in the enterprise.

The effort to persuade others to invest was held to be the "undeniably significant" one in *Turner*, and we are convinced on the record before us that it was the significant one here. If it develops at a later stage in the litigation that the plaintiffs' allegations are not supported by the evidence, the District Court can so find. But, we have no alternative now but to reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.