**Gerald R. SMITH and Mary Smith, Plaintiffs-Appellants,**

v.

**Allen J. GROSS, Sun Valley Bait and Ecology Farms, Inc., Ronald S. Gaddie, Sr., and North American Bait Farms, Inc., Defendants-Appellees.**

Nos. 77–3705, 77–3159.

United States Court of Appeals, Ninth Circuit.

Sept. 17, 1979.

James T. Milliken, Scottsdale, Ariz., for plaintiffs-appellants.

Cary T. Inabinet, Behrens, MacLean & Jacques, Phoenix, Ariz., on brief; I. Douglas Dunipace, M. Byron Lewis, Jennings, Strouss & Salmon, Phoenix, Ariz., argued, for defendants-appellees.

Before CARTER and GOODWIN, Circuit Judges, and WATERS,* District Judge.

PER CURIAM:

Gerald and Mary Smith appeal from the district court's judgment dismissing their action against the defendants. The Smiths brought suit against Gross, Gaddie, and the two corporate defendants for violation of the federal securities laws. The district court dismissed the suit without prejudice for lack of subject matter jurisdiction on the ground that there was no security involved in the transactions between the parties. The Smiths also appealed from the district court's denial of their motion under Fed.R.Civ.P. 60(b) to amend the record on appeal.

We reverse. The transaction between the parties involved an investment contract. We need not decide whether the Rule 60(b) motion was properly denied.

---

* The Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

## I

### Procedure

The appellees, defendants below, filed a motion either to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, to grant summary judgment in favor of the defendants. In ruling on the motion, the district court had affidavits from both sides. The district court dismissed the action without prejudice as to all defendants on the ground that there was no subject matter jurisdiction. At the hearing on the motion, the district court judge stated that he was granting the motion to dismiss because there was no investment contract between the parties.

■ We have held that the dismissal of an action for failure to show that a "security" is involved is addressed to the merits and, thus, the judgment is based on failure to state a claim rather than a lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(6);[1] *Black v. Payne,* 591 F.2d 83, 86 n.1 (9th Cir. 1979). *But see AMFAC Mortgage Corp. v. Arizona Mall of Tempe,* 583 F.2d 426, 430 n.5 (9th Cir. 1978).

Both parties filed affidavits in connection with the defendants' motion. Because the district court did not exclude consideration of these affidavits in reaching its result, the judgment must properly be considered as the grant of summary judgment in favor of defendants. *Id.* at 89; *see Great Western Bank & Trust v. Kotz,* 532 F.2d 1252, 1254

(9th Cir. 1976); *Timberlane Lumber Co. v. Bank of America,* 549 F.2d 597, 601–02 (9th Cir. 1976).

■ The test to be applied in reviewing the grant or denial of a summary judgment motion is that "[s]ummary judgment is 'proper only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.'" *Great Western Bank & Trust,* 532 F.2d at 1254 (quoting *Caplan v. Roberts,* 506 F.2d 1039, 1042 (9th Cir. 1974)).[2] Our standard of review is the same in securities litigation. *Id.*

## II

### Facts

■ The following statement of facts is taken from the Smiths' amended complaint and Gerald Smith's affidavit. Seller Gross, in a promotional newsletter, solicited buyer-investors to raise earthworms in order to help Gross reach his quotas of selling earthworms to fishermen. In the newsletter, buyers were promised that the seller's growing instructions would enable buyers to have a profitable farm, that the time involved would be similar to raising a garden, that the earthworms double in quantity every sixty days, and that the seller would buy back all bait size worms produc-

1. Although it is somewhat unclear, apparently the district court believed it was acting under Fed.R.Civ.P. 12(b)(1). Summary judgment treatment under Rule 56 is not required for a "speaking motion" under Rule 12(b)(1). *Timberlane Lumber Co. v. Bank of America,* 549 F.2d 597, 602 (9th Cir. 1976). The result, however, is the same whether the defendants' motion is viewed under Rule 12(b)(1) or Rule 56. In passing on a motion to dismiss, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978).

2. The defendants, citing *KVOS v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936) and *Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d 1320 (3d Cir. 1972), argue that their statement of facts ought to be accepted as

true to determine whether defendants' motion was properly granted.

These decisions do not support the defendants contention. *KVOS* and *Tanzymore* held that the pleadings will be read as a whole with any relevant specific allegations found in the body of the complaint taking precedence over the formal jurisdictional allegation. If the pleader avers jurisdiction generally, but allegations in other portions of the complaint negate its existence, the court should dismiss the action. 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1350, at 551–52, & n.82 (1978). These decisions do not support Gaddie's contention that the allegations of the plaintiffs are not to be taken as true for purposes of ruling on a motion for dismissal whenever jurisdiction is at issue. Here, the specific facts alleged by the Smiths did not negate the general allegations of jurisdiction.

ed by buyers at $2.25 per pound. After responding to the newsletter, the Smiths were told by Gross that very little work was required, that success was guaranteed by the agreement to repurchase the Smiths' production, and that Gross needed the Smiths' help in the common enterprise of supplying worms for the bait industry. The Smiths alleged that they would not have purchased the worms without Gross's promise to repurchase the Smiths' production at $2.25 per pound. The Smiths were assured that they need not be worried about the market for worms because Gross would handle the marketing.

The Smiths alleged that, contrary to Gross's representations, worms multiply at a maximum of eight rather than 64 times per year, and that they could achieve the promised profits only if the multiplication rate was as fast as represented and Gross purchased the Smiths' production at $2.25 per pound. They also alleged that $2.25 is greater than the true market price and that Gross could pay that price only by selling the worms to new worm farmers at inflated prices. The price at which Gross sold the worms to worm farmers was ten times in excess of the true market value. There is little market for worms in the Phoenix area.

Two days before the hearing on the motion for summary judgment, the Smiths took the deposition of Shuster, an employee of Gross. The Smiths did not mention this deposition at the hearing. After the Smiths had filed a notice of appeal from the district court's grant of summary judgment, they moved under Rule 60(b) to correct the designation of the record on appeal to include the Shuster deposition. This motion was denied.

### III

### Investment Contract

The Smiths contend that the transactions between the parties involved an investment contract type of security. 15 U.S.C. §§ 77b(1), 78c(a)(10). In SEC v. W. J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), the Supreme Court set out the conditions for an investment con-

tract: "[t]he test is whether the scheme involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others." This court in SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), held that, despite the Supreme Court's use of the word "solely", the third element of the Howey test is "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." The Turner court defined a common enterprise as "one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." Id. at 482 n.7.

We find this case virtually identical with Miller v. Central Chinchilla Group, Inc., 494 F.2d 414 (8th Cir. 1974). In Miller the defendants entered into contracts under which they sold chinchillas to the plaintiffs with the promise to repurchase the offspring. The plaintiffs were told that it was simple to breed chinchillas according to the defendants' instructions and that the venture would be highly profitable. The plaintiffs alleged that the chinchillas were difficult to raise and had a high mortality rate, and that the defendants could return the promised profits only if they repurchased the offspring and sold them to other prospective chinchilla raisers at an inflated price.

The Miller court focused on two features in holding that there was an investment contract: (1) the defendants persuaded the plaintiffs to invest by representing that the efforts required of them would be very minimal; and (2) that if the plaintiffs diligently exerted themselves, they still would not gain the promised profits because those profits could be achieved only if the defendants secured additional investors at the inflated prices. 494 F.2d at 417. Both of these features are present in the instant case. We find Miller to be persuasive and consistent with Turner.

The defendants argue that Miller is distinguishable on the ground that there the

contract prohibited buyers from reselling to anyone other than the sellers; whereas here the buyers were free to resell to anyone they wanted to. The defendants contend that this distinguishing feature shows that the agreement was not a common enterprise.

The defendants' argument is without merit. There was a common enterprise as required by *Turner*. The Smiths alleged that, although they were free under the terms of the contract to sell their production anywhere they wished, they could have received the promised profits only if the defendants repurchased above the market price, and that the defendants could have repurchased above the market price only if the defendants secured additional investors at inflated prices. Thus, the fortune of the Smiths was interwoven with and dependent upon the efforts and success of the defendants. *See Turner*, 474 F.2d at 482 n.7.

We also find that here, as in *Miller*, the third element of an investment contract set forth in *Turner*—that the efforts of those other than the investor are the undeniably significant ones—was present here. The *Miller* court noted that the plaintiffs there had been assured by the sellers that the effort needed to raise chinchillas was minimal. The significant effort necessary for success in the endeavor was that of the seller in procuring new investors who would purchase the chinchillas at inflated prices. Here, the Smiths alleged that they were promised that the effort necessary to raise worms was minimal and they alleged that they could not receive the promised income unless the defendants purchased their harvest.

We find the analysis in *Miller* persuasive and hold that the Smiths alleged facts that, if true, were sufficient to establish an investment contract.

The defendants contend that the agreement between the parties was analogous to a franchise agreement. Franchise agreements are not securities. *See, e. g., Bitter v. Hoby's International, Inc.*, 498 F.2d 183 (9th Cir. 1974). This argument is not persuasive. The franchise cases are distinguishable. In *Bitter* this court focused on the fact that a franchisee independently determines his own success. *Id.* at 185. Here, according to the Smiths' allegations, the only market in the Phoenix area for their production was the guaranteed right to resell to the sellers, and, thus, the Smiths were not solely responsible for their own success. We also note that the ultimate buyers in *Bitter* were the consuming public and not as here the offering party.

The facts as alleged in the Smiths' amended complaint and affidavit establish that an investment contract existed. Accordingly, we need not consider whether the district court correctly decided to dismiss the Smiths' Rule 60(b) motion to include the Shuster deposition in the record on appeal.

The judgment of the district court is reversed.