Howard H. MASON, Plaintiff-Appellant,

v.

Bradley UNKELESS, Defendant-Appellee.

No. 78–1944.

United States Court of Appeals,
Ninth Circuit.

May 12, 1980.

Gary A. Foltz, Law Offices of Robert L. Purvin, Jr., San Diego, Cal., for plaintiff-appellant.

Bradley Unkeless, in pro per.

Before MERRILL and FERGUSON, Circuit Judges, and SMITH, District Judge.*

* The Honorable Russell E. Smith, Senior United States District Judge for the District of Montana, sitting by designation.

FERGUSON, Circuit Judge:

Plaintiff appeals the district court's dismissal of his action seeking damages for securities fraud. Initially, the district court dismissed plaintiff's complaint for lack of subject matter jurisdiction but permitted plaintiff leave to amend. The court then denied a motion to dismiss the action based on the amended complaint, but it granted dismissal after defendant filed a motion to review the denial, along with a certified copy of plaintiff's answer to a cross-complaint in a related state proceeding. We affirm the district court's dismissal of the action.

## FACTUAL BACKGROUND

During a telephone conversation in 1976, defendant Bradley Unkeless described an investment opportunity to Howard Mason. Mason and Unkeless were attorneys who, at the time of the conversation, had been friends for a few years. Mason alleged that Unkeless suggested that he invest in a profitable photocopy business operated by James Lancelle, who Unkeless said was an experienced businessman. Unkeless did not reveal that he was representing Lancelle and his wife and general partner, Lynne Lancelle, in a pending bankruptcy proceeding.

Mason alleged that he entered into an oral limited partnership agreement with the Lancelles, under which Mason would receive a 20 per cent share of the profits of their business, Western Copy Products, in return for his capital investment, and the Lancelles would run the business and receive an 80 per cent share of profits. Mason and the Lancelles raised Mason's share to 25 per cent when he made an additional capital contribution. The partners agreed that they would later determine at what point to distribute profits instead of reinvesting them.

Over a four-month period, Mason invested $9,000 in the photocopy business,[1] provided office space for the company, and allowed it the use of his telephone. His state court pleading alleged that he was the owner of the company's master ledger.

Mason asserted that the Lancelles dissipated the funds he invested and failed to perform as agreed. He filed suit against them in state court and brought this securities fraud action against Unkeless in federal court, alleging that he made material fraudulent misstatements and omissions in the telephone conversation in connection with the sale of a security and, therefore, that he violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.

## MOTION TO DISMISS

We must review the proceeding below as a grant of summary judgment for defendant, despite its posture as a Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Smith v. Gross*, 604 F.2d 639, 641 (9th Cir. 1979); *Black v. Payne*, 591 F.2d 83, 86 n.1, 89 (9th Cir.), *cert. denied*, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979). A "dismissal of an action for failure to show that a 'security' is involved is addressed to the merits and, thus, the judgment is based on failure to state a claim [12(b)(6)] rather than a lack of subject matter jurisdiction." *Smith v. Gross, supra*, 604 F.2d at 641. *Accord, Black v. Payne, supra*. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). *But see Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 430 n.5 (9th Cir. 1978). As occurred in *Smith* and *Black*, the district court here considered matters outside the pleadings in reaching its decision, thus mandating review under summary judgment instead of motion to dismiss standards.[2] Fed.R.Civ.P. Rule

---

1. Mason's federal court pleadings allege a $9,000 investment, which includes $7,500 that Mason borrowed to invest in the company after he entered the partnership with his initial capital outlay, but his state court pleading alleges an initial investment of $1,700 and a later payment of $7,500, which would make the total investment $9,200.

2. If a motion under Rule 12(b)(1) requires reference to affidavits, the court is not required to treat it as a motion for summary judgment. *Smith v. Gross*, 604 F.2d 639, 641 n.1 (9th Cir. 1979); *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 602 (9th Cir. 1976). As this court noted in *Smith*, the result "is the same whether the defendants' motion is viewed

12(b); *Smith v. Gross, supra; Black v. Payne, supra. See Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir. 1980).

We uphold the judgment for defendant because "viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9th Cir. 1973), *quoted in Great Western Bank & Trust v. Kotz,* 532 F.2d 1252, 1254 (9th Cir. 1976). The allegations in the state and federal pleadings and the statements in the affidavits here are simply inadequate to form the basis for a federal securities fraud claim.

*SECTION 10(b) AND RULE 10b–5*

Section 10(b) and Rule 10b–5 proscribe the use of any untrue statement of material fact, or the omission of material facts necessary to make any statements made not misleading, in connection with the purchase or sale of any security. Rule 10b–5(2), 17 C.F.R. 240.10b–5(2). Mason alleged that Unkeless telephoned him and "induced Plaintiff to invest money for a share of profits in the business of James Jerome

Lancelle to that time unknown to Plaintiff." He further alleged that Unkeless "described Mr. Lancelle as known to defendant for having extensive experience in the photocopy business and who had such a business which business would prove profitable to Plaintiff as an investor," and he alleged that Unkeless failed to reveal material information that was within his knowledge.

■ We do not believe that Unkeless's limited involvement in Mason's dealings with the Lancelles can form the basis for liability under federal securities law. While we do not question the materiality of the information that Unkeless omitted and the misrepresentations that he made, *see TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273, 1293 (9th Cir. 1979), we do not find the requisite connection between Unkeless's statements and omissions and the sale of a security. Even if Mason's investment in the Lancelles' business were an investment contract within the definition of a federal security,[3] Unkeless could

---

under Rule 12(b)(1) or Rule 56. In passing on a motion to dismiss, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978)." *Smith v. Gross, supra,* at 641 n.1.

**3.** A number of factors suggest that Mason's investment in Western Copy Products did not constitute a security. A limited partnership generally is a security, *McGreghar Land Co. v. Meguiar,* 521 F.2d 822, 824 (9th Cir. 1975); 1 L. Loss, Securities Regulation 503–05 (2d ed. 1961), but the oral "limited partnership agreement" here could not create a valid limited partnership. Mason's affidavit states, "Mr. Lancelle's statement that a limited partnership was created by oral agreement between me and him is both factually and legally in error, since a limited partnership requires a written agreement." In addition, in his answer to Lancelle's state court counterclaim, Mason alleged that he was a "partner and part owner of Western Copy Products." He did not claim that he was a limited partner, apparently because he knows that he was not.

Mason's statement that there was no limited partnership is correct. In California, in order to form a limited partnership, there must be a specific filing of Articles of Limited Partnership

with the County Recorder. Cal.Corp.Code § 15502(1) (West 1977). Substantial compliance with the detailed filing requirements is sufficient, Cal.Corp.Code § 15502(2) (West 1977), but the pleadings and affidavits here reveal no attempt to comply whatsoever. The partnership was entirely oral.

In California, each general partner has equal management and control. Cal.Corp.Code § 15018(e) (West 1977). It seems here that Mason shared control of the business: he was to decide with the Lancelles when profits would be distributed, and he asserts that the master ledger is his property. Even if he did not exercise such control as to defeat a finding of a security here, *see Parvin v. Davis Oil Co.,* 524 F.2d 112 (9th Cir. 1975); *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), as a general partner he had authority to do so.. That authority might defeat existence of a security here, unless the test for an investment contract laid out in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), is satisfied, nonetheless. Under the *Howey* test, an investment contract involves an investment in a common enterprise with profits to come solely from the efforts of others. *Id.* Subsequent cases have interpreted "solely from the efforts of others"

not be held liable on the basis of a conversation in which there was no suggestion whatever that Mason purchase a security.

This does not mean that a securities defendant must know that the conduct in which he is engaging is proscribed, *Byrnes v. Faulkner, Dawkins & Sullivan*, 413 F.Supp. 453, 470 (S.D.N.Y.1976), *aff'd*, 550 F.2d 1303 (2d Cir. 1977); *see SEC v. Chinese Consolidated Benevolent Association, Inc.*, 120 F.2d 738 (2d Cir.), *cert. denied*, 314 U.S. 618, 62 S.Ct. 106, 86 L.Ed. 497 (1941), or even that he must know that the investment involved is a security. *Tarvestad v. United States*, 418 F.2d 1043, 1047 (8th Cir. 1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970). *See Linden v. United States*, 254 F.2d 560, 568 (4th Cir. 1958). It means only that he may not be held liable where, as here, the investment as he proposes it does not constitute a security, and his involvement in the transaction ends at that point.

Mason did not allege that Unkeless suggested Mason enter an agreement under which he would passively invest funds in an enterprise with profits to come from the Lancelles' efforts, with Mason exerting no management control. Such an arrangement would likely be a security. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946); *Black v. Payne, supra*, 591 F.2d at 87; *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). Mason did not suggest that Unkeless had any idea what sort of agreement Mason would strike with the Lancelles. Absent this crucial connection between Unkeless's solicitation of interest and the sale of a security, the district court could not find a cause of action for federal securities fraud. Mason's proper remedy against Unkeless was a state action for common law fraud.

For the foregoing reasons, we affirm the judgment of the district court.

MERRILL, Circuit Judge, dissenting:

I dissent.

If Mason invested money with Lancelle under an agreement whereby he was to share profits resulting solely from the managerial or entrepreneurial efforts of Lancelle, then, under *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946),[1] the interest of Mason constituted an investment contract and a security. The record here seems to me amply to establish that such was the agreement between Mason and Unkeless. If, because of technical failure to comply with state law, a limited partnership did not result, that would not operate to modify the agreement by giving Mason any managerial voice in the enterprise and would have nothing to do with the *Howey* test. If the complaint filed by Mason failed sufficiently to allege that Unkeless's inducement was directed to such an arrangement, and thus to investment in a security, then an opportunity to amend would seem appropriate.

The basic questions presented by this case, in my view, are whether Mason, in truth, was induced by Unkeless through the conversation in question to enter into an investment contract with Lancelle, and whether he relied to his detriment upon Unkeless's failure to make full disclosure of his connection with Lancelle. These questions were never reached by the district court. I would remand for further proceedings so that they could be reached.

---

to allow the investor some role in the success of the enterprise without defeating the existence of a security. *See, e. g., Parvin v. Davis Oil Co., supra*; *SEC v. Glenn W. Turner Enterprises, Inc., supra*. Because we do not find that Unkeless's actions in the telephone conversation could subject him to liability, we need not reach the question whether the investment here was a security covered by the 1934 Act.

1. Recently reaffirmed in *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).