**Gordon M. JACKSON, Jr., et al.,
Plaintiffs-Appellants,**

v.

**The AMERICAN BAR ASSOCIATION,
an Unincorporated Association,
Defendant-Appellee.**

**No. 74–1416.**

United States Court of Appeals,
Ninth Circuit.

June 3, 1976.

---

C. David Herring, of Cornish, Franklin, & Herring, San Diego, Cal., for plaintiffs-appellants.

Michael Justin Myers, of Gray, Cary, Ames & Frye, San Diego, Cal., for defendant-appellee.

OPINION

Before TRASK and KENNEDY, Circuit Judges, and CONTI,* District Judge.

PER CURIAM:

Plaintiffs-appellants appeal from a judgment of the United States District Court for the Southern District of California dismissing their action against the defendant. That action sought to enjoin the defendant, American Bar Association (ABA), from allegedly perpetrating discriminatory acts against plaintiffs resulting in depriving them of substantial rights as members of the ABA. The action was brought as a class action by five law student members of the ABA on behalf of themselves and approximately 2,600 others attending law schools not approved by the ABA.

Each law student member of the ABA is automatically enrolled in the Law Student Division (ABA/LSD), one of twenty sections and divisions of the ABA. The ABA/LSD is governed by bylaws approved by the governing body of the ABA.[1] In August 1970, the ABA/LSD House of Delegates adopted a resolution to delete such terms as "approved" and "unapproved" law schools from the bylaws governing law student membership and proposed a similar resolution to the ABA, which was duly adopted. The effect of this action was to make any bona fide law student eligible, under such conditions as the ABA Board of Governors might prescribe, to become a law student member of the ABA with such rights and privileges as the ABA House of Delegates might provide and without respect to whether the law school in which the student was enrolled was or was not one approved by the ABA. In May 1973, however, the ABA Board of Governors adopted a resolution which changed the 1970 plan deleting any distinction between "approved" and "unapproved" law schools, and created a status of "members-at-large" for law student members attending non-ABA approved law schools. This change followed a recommendation made to the ABA Board of Governors by the Board of Governors of the ABA/LSD.

The appellants, students of unapproved schools, claim that this action was an unconstitutional act of discrimination against them and a deprivation of property without due process in violation of the Fifth Amendment. They filed a complaint on July 30, 1973, seeking redress by way of a declaratory judgment and injunctive relief and prayed for a temporary restraining or-

* Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation.

1. The ABA is governed by a Board of Governors and a House of Delegates acting together as houses of a bicameral body; by the Board acting administratively between annual meetings of the House; and by an Executive Committee acting between meetings of the Board.

der. The motion for a temporary restraining order was denied on August 1, 1973. Thereafter, the defendants filed motions to dismiss and to deny the preliminary injunction. A hearing was held on these latter motions, and the motion to deny the injunction was granted at once with the motion to dismiss granted later. Appellants take this appeal from the judgment entered upon those orders.

The district court ordered dismissal upon two grounds: first, that it appeared to a legal certainty that the value of the appellants alleged proprietary rights did not exceed the jurisdictional amount required under 28 U.S.C. § 1331, and second, that the complaint failed to state a claim upon which relief could be granted. Although we discuss both grounds, we base our affirmance of the district court only on the second ground.

### I.

Where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented.[2] *Marquez v. Hardin*, 339 F.Supp. 1364, 1370 (N.D.Cal.1969); *Dodge v. Nakai*, 298 F.Supp. 17, 21 (D.Ariz.1968). In many of the cases involving a request for injunctive relief, it is not difficult to find an adequate monetary measure of the right

sought to be protected. *E. g., Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074 (9th Cir. 1973). *See generally* 1 Moore's Federal Practice ¶ 0.96[2] (2d ed. 1975). The rights listed by appellants here, however, appear to be intangible, speculative, and lack the capability of being translated into monetary value. *See Healy v. Ratta*, 292 U.S. 263, 271–72, 54 S.Ct. 700, 78 L.Ed. 1248 (1934); *Rosado v. Wyman*, 414 F.2d 170, 176–77 (2d Cir. 1969), *rev'd on other grounds*, 397 U.S. 397, 91 S.Ct. 106, 24 L.Ed.2d 68 (1970); 1 Moore's Federal Practice, *supra*, ¶ 9.92[5]. Even the right to receive funds is not a right unless and until the law student makes an application and qualifies for a grant or enters a competition and is successful in winning a prize. Nor is an aggregation of dues paid a proper measure of the amount in controversy. A member may be said to have a right as a member to pay dues, but that right cannot be considered an amount in controversy which he is seeking to recover or can be used to measure the value of his membership right which is allegedly being abridged but not taken away.[3]

Even if some of the claims could qualify as amounts in controversy, there may be a problem of aggregating claims for purposes of section 1331. *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Potrero Hill Community Action Committee v. Housing Authority*, 410 F.2d 974 (9th Cir. 1969). In *Snyder v. Harris, supra,* the Su-

---

2. Here the rights claimed which would be abridged are set out in the complaint as follows:

"(a) The rights to be seated and to serve as members of the House of Delegates;

"(b) The rights to be nominated for and to serve in any elective office;

"(c) The rights to be appointed to and to serve in any appointive office;

"(d) The right to submit nominations for any elective office;

"(e) The right to submit resolutions and By-law amendments;

"(f) The right to receive advance agenda information respecting business sessions;

"(g) The rights to be represented in the affairs of said Division and to vote in elections and referenda;

"(h) The rights to be considered for and to receive awards, both honorary and pecuniary;

"(i) The rights to participate in academic or professional competitions and to receive prize monies therefor;

"(j) The right to receive funds;

"(k) The right to enjoy, without impediment by wrongful threat or intimidation or otherwise, every incident of law student membership in Defendant, subject only to the same terms and conditions as are applicable to all law student members of Defendant . . . ."

3. We do not consider this action to involve equitable relief that is sought to protect or restore fundamental constitutional or political rights in the context of the amount in controversy. *See Hague v. CIO*, 307 U.S. 496, 507–08, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Giles v. Harris*, 189 U.S. 475, 485, 23 S.Ct. 639, 47 L.Ed. 909 (1903). Here, the rights sought to be vindicated are rights of membership in a private association.

preme Court held that aggregation in class suits for purposes of section 1331 was proper "only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335, 89 S.Ct. at 1056. The first of the two criteria appears clearly inapplicable. Here we have multiple plaintiffs seeking to unite to enforce asserted multiple rights. The second criterion of *Snyder* is closer to the mark; but even assuming this claim meets the "rights" test, the amount in controversy must still be capable of measurement in terms of pecuniary value. How do we value in money the right to be nominated for an elective office in the ABA/LSD? and, how do we calculate the chances of any one of the plaintiffs to be elected if nominated?

An additional theory advanced to satisfy the amount in controversy under section 1331 was that under California decisional law the law student members obtained proprietary rights in assets of the ABA as an unincorporated association. In support of its Motion to Dismiss, the ABA submitted a number of affidavits of its staff and key employees. None of these affidavits were controverted. One of these affidavits was that of Raymond E. Tyra, an Assistant Director of the ABA Staff, Division of Professional Service Activities. He stated that Article 21, Section 21.7(b) of the bylaws of the ABA provides that a law student "has no interest in the property of the Association." Tyra further stated in his affidavit that each applicant for membership in the ABA/LSD was required to sign an application containing the sentence, "as a law student (or regular) member of the ABA, I will abide by its Constitution, Bylaws and Code of Professional Responsibility." It thus would appear that plaintiffs and their class members have no proprietary right in the assets of the ABA.

## II.

Even if we were to assume arguendo that the appellants have established the requisite jurisdictional amount in controversy, a point we find unnecessary to decide, we agree with the district court that the complaint failed to state a claim upon which relief could be granted. The Fifth Amendment claim of appellants was predicated upon an allegation that "the United States Government has become so interdependent with Defendant and involved in its business to such a significant extent as to make the acts of Defendant, herein complained of, the acts of the United States Government." Thus, as we understand the argument, the acts of the ABA in amending its bylaws were the acts of the United States; because they were discriminatory, the acts were in violation of the Fifth Amendment.

This, of course, raises the "state action" discrimination problem illustrated so clearly by *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), and *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). We find the facts here to fit the profile established by *Moose Lodge* rather than *Wilmington Parking Authority.* The affidavits filed in support of and in opposition to the Motion to Dismiss disclose that while substantial funding was received from the United States, it went to a separate entity known as the Fund for Public Education and was kept entirely separate from the ABA general funds. The affidavits also disclose that the activity charged as discriminatory was activity of the association in its private capacity—the management of the organization itself—and had little or nothing to do with the Fund for Public Education. There is nothing in the record to indicate that the government intruded into the management and operation of the ABA itself: that it dictated the organization or structure, interfered with its operations, or managed its policies. As Judge Friendly said in *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir. 1968), in connection with a similar contention: "[The argument of the appellants] . . . overlooks the essential point—that the state must be involved not simply with some activity of the

institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." *See Moose Lodge No. 107 v. Irvis, supra* at 173, 92 S.Ct. 1965.

One final argument need be considered—appellants complain that they were not permitted to amend their complaint and urge that such an option be tendered now. The reason urged is that since the case was decided below on a motion to dismiss, the plaintiffs should have been allowed to amend under Fed.R.Civ.P. 15(a). But where a motion to dismiss is supported by affidavits on both sides, it becomes a speaking motion and is treated as a motion for summary judgment. Fed. R.Civ.P. 12(b); *see Potrero Hill Community Action Committee v. Housing Authority, supra* at 974. Furthermore, the record does not disclose any effort to amend. Under the circumstances here, the request to remand with instructions to permit amendment comes too late.

The judgment is affirmed.