MICHAEL S. SHAW *et al.*, Plaintiffs-Appellants, *v.* THE AMERICAN BAR ASSOCIATION, Defendant-Appellee.

First District (2nd Division)   No. 77-1102

Opinion filed August 8, 1978.

Foss, Schuman & Drake, of Chicago, for appellants.

Kirkland & Ellis, of Chicago (Don H. Reuben, Leo K. Wykell, and Samuel Fifer, of counsel), for appellee.

Mr. JUSTICE BROWN delivered the opinion of the court:

Plaintiffs, members of the International Law Section of the American Bar Association (hereinafter ABA), filed an action against the ABA for temporary and permanent injunctive relief. They alleged that a portion of a Section bylaw provision constitutes a constitutionally impermissible poll tax by requiring registration at the ABA's annual meeting as a prerequisite to voting in the Section's elections for its officers and governing council.

Pursuant to section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1975,

ch. 110, par. 48(1)(i)), the executive director and president of the ABA filed a motion to dismiss on July 22, 1977, which stated that they were sued incorrectly as "The American Bar Association," and which alleged: (1) that defendant's activities lacked the requisite State action; (2) that plaintiffs failed to exhaust their administrative remedies within the ABA; and (3) that the equities favor defendants.

The trial court entered an order on July 27, 1977, which dismissed the case with prejudice and which found no just reason for any delay in appeal.

Plaintiffs appeal from that order, contending: (1) that State action is present in the ABA's enforcement of that portion of the Section's bylaw provision which requires registration at the ABA's annual meeting; (2) that plaintiffs are not required to exhaust administrative remedies, if any; and (3) that the balance of the equities favors plaintiffs.

Our discussion of the first contention obviates a consideration of plaintiffs' remaining contentions.

On July 14, 1977, plaintiff Shaw filed his complaint, which characterized the ABA as a "national organization" which "functions in a public fashion" and "serves in a public capacity," and alleged that the ABA is "required to conduct its activities in accordance with the concepts of due process and equal protection of the law set forth in the Constitution of the United States and the Constitution of the State of Illinois." The complaint further alleged that the $100 registration fee for the 1977 annual meeting is a poll tax which is violative of the Fourteenth Amendment of the United States Constitution and "similar provisions" in the Illinois Constitution. The amended complaint was filed July 18, 1977, repeated the aforementioned, and added John L. Miller as a plaintiff. The amended complaint requested: (1) entry of an order temporarily restraining the ABA from enforcing the registration requirement of the Section bylaw provision; (2) that temporary and permanent injunctions issue enjoining the ABA from requiring registration or the payment of a fee as a prerequisite to voting in the International Law Section elections; and (3) that the ABA give notice to each Section member at least 10 days prior to the election on August 9, 1977, of the court's order that each Section member may vote without paying the registration fee.

The pertinent Section bylaw provision is as follows:

Rule 4.3(d)

"(d) The person(s) receiving a majority vote—or, in case of two (2) or more candidates for the same office, a plurality vote—of those Members of the Section registered at the Annual Meeting and who are present at the Section's election and entitled to vote thereat shall be elected for a term beginning at the close of the Annual Meeting at which the election takes place and ending at the

close of the Annual Meeting at the end of the term specified or until a successor shall have been duly elected and qualified."

The plaintiffs state in their brief in this court that the ABA is in fact the equivalent of a national government agency regulating the legal profession in the United States. They state therein that the unrebutted facts before the trial court at the time of dismissal were that the ABA regulates: (1) legal education and admission to the bar; (2) the unauthorized practice of law; (3) the publication of "law lists"; (4) the conduct of attorneys and judges; and (5) Federal judicial selection and administration. They further state as unrebutted facts that the ABA's legislative effort is part of the actual legislative process in those areas of its interest; that the ABA's 1975-76 Policy and Procedures handbook sets forth the full breadth of its policies on major legislative, national, and professional issues; that its membership consists primarily of attorneys, each of whom is an officer of the court where licensed to practice; that its membership includes judges and public office holders; that it is indirectly funded by the United States Government by being exempt from Federal income taxation and that the International Law Section received $50,000 from the State Department through the ABA's Fund for Public Education; and that articles in the American Bar Association Journal have set forth substantial evidence of the foregoing allegations.

In *Jackson v. American Bar Association* (9th Cir. 1976), 538 F.2d 829, a class action was brought by law student members of the ABA who attended non-ABA approved law schools. The gravamen of the complaint was that an amendment of the ABA's governing bylaws which created a status of "members at large" for law student members who attended non-ABA approved law schools was discriminatory. The complaint alleged, *inter alia,* that the right to vote in elections would be abridged if the bylaw amendment were to stand. The United States Court of Appeals found that the complaint failed to state a claim upon which relief could be granted.

"* * * The Fifth Amendment claim of appellants was predicated upon an allegation that 'the United States Government has become so interdependent with Defendant and involved in its business to such a significant extent as to make the acts of Defendant, herein complained of, the acts of the United States Government.' Thus, as we understand the argument, the acts of the ABA in amending its bylaws were the acts of the United States; because they were discriminatory, the acts were in violation of the Fifth Amendment.

This, of course, raises the 'state action' discrimination problem illustrated so clearly by *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961), and *Moose Lodge*

*No. 107 v. Irvis,* 407 U.S. 163, 92 S. Ct. 1965, 32 L. Ed. 2d 627 (1972). We find the facts here to fit the profile established by *Moose Lodge* rather than *Wilmington Parking Authority.* The affidavits filed in support of and in opposition to the Motion to Dismiss disclose that while substantial funding was received from the United States, it went to a separate entity know as the Fund for Public Education and was kept entirely separate from the ABA general funds. The affidavits also disclose that the activity charged as discriminatory was activity of the association in its private capacity—the management of the organization itself—and had little or nothing to do with the Fund for Public Education. There is nothing in the record to indicate that the government intruded into the management and operation of the ABA itself: that it dictated the organization or structure, interfered with its operations, or managed its policies. As Judge Friendly said in *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir. 1968), in connection with a similar contention: '[The argument of the appellants] . . . overlooks the essential point—that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint.' See *Moose Lodge No. 107 v. Irvis, supra* at 173, 92 S. Ct. 1965." *Jackson,* 538 F.2d 829, 832-33.

■■■ In the case at bar, the record does not support a conclusion that the United States Government or the State of Illinois are connected with the ABA's enforcement of the registration requirement of the Section bylaw provision. This activity relates to the management of the organization itself, and has little or nothing to do with the Fund for Public Education or the tax exempt status of the ABA. (See *Jackson.*) Plaintiffs have failed to show any involvement by the Illinois courts in the enforcement of the registration requirement of the Section bylaw provision, or that the Illinois courts would enforce the registration requirement. (See *Bates v. State Bar of Arizona* (1977), 433 U.S. 53 L. Ed. 2d 810, 350, 97 S. Ct. 2691; *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004.) "It is generally held that courts in the absence of circumstances of unfairness will not intervene in questions involving the enforcement of bylaws and matters of discipline in voluntary associations." *American Federation of Technical Engineers, Local 144 v. La Jeunesse* (1976), 63 Ill. 2d 263, 268, 347 N.E.2d 712.

■■ Under the facts and circumstances of the instant case, we find that plaintiffs have not proved state action in the ABA's enforcement of the registration requirement of the Section bylaw provision. Therefore, the registration requirement does not constitute a prohibited poll tax as found

in *Harper v. Virginia State Board of Elections* (1966), 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079, cited by plaintiffs.

The trial court did not err in dismissing plaintiffs' case. The order of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.