**Hollis O. BLACK, for himself and on behalf of a class of persons similarly situated, Plaintiffs-Appellants,**

v.

**William E. PAYNE, Executive Officer, Public Employees' Retirement System, et al., Defendants-Appellees.**

No. 76–2906.

United States Court of Appeals, Ninth Circuit.

Feb. 15, 1979.

Rehearing Denied April 16, 1979.

---

Jeffrey L. Gunther, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellees.

Before CHOY and SNEED, Circuit Judges, and KERR, * District Judge.

CHOY, Circuit Judge:

Hollis O. Black appeals from the district court's dismissal of his suit challenging the change in mandatory retirement age for certain California state employees. We affirm.

## I. *Statement of the Case*

Appellant Black began working for the state of California on December 2, 1970. At that time, the mandatory retirement age applicable to Black was age 70. As a state worker, Black was enrolled in the state's pension program, the Public Employees Retirement System (PERS), Cal.Gov't Code § 20000.

In 1971, the California legislature enacted Senate Bill 249, Stats.1971, ch. 170, § 38, p. 231. That bill amended Cal.Gov't Code § 20981, lowering the mandatory retirement age for members of PERS to 67 years. Pursuant to this amendment, Black was retired before reaching the age of 70.

Black filed a class action suit against various persons connected with the operation of PERS. He claimed to represent all those persons who were members of PERS before the enactment of Senate Bill 249 and who at the time of its enactment and effective date were between the ages of 65 and 70. Black's complaint averred first that PERS distributed newsletters misstating the effects of the statutory changes for the purpose of inducing employees subject to the mandatory retirement provisions to ap-

---

* The Honorable Ewing T. Kerr, Senior U. S. District Judge for the District of Wyoming, sitting by designation.

ply for benefits and thereby waive all claims regarding the validity of the amendment. Black claimed that these actions violated the anti-fraud provisions of the federal securities laws. Black alleged secondly that the change in mandatory retirement age violated the fourteenth amendment of the United States Constitution. Asserting a property right in continued state employment until age 70, Black claimed that Senate Bill 249 deprived him (and the class he purported to represent) of property without affording a hearing and other incidents of due process.

Black sought reinstatement and backpay for all employees retired pursuant to the amendment and adjustment of the pension benefits of those former employees to what they would have received had they continued to work until age 70. He also prayed for a permanent injunction requiring PERS to disclose all material facts regarding the statutory amendments and prohibiting the state from requiring any employee to retire without affording a hearing.

 Appellees, defendants below, filed a motion to dismiss for lack of subject matter jurisdiction. Black responded with a motion for summary judgment. The district court granted the motion to dismiss and denied appellant's motion for summary judgment. The district court held that Black's participation in PERS failed to satisfy the definition of "security" enunciated by the Supreme Court. The court also held that Black had no contract right of which Senate Bill 249 could have deprived him.[1] After the district court rejected a motion for rehearing and new trial, Black filed the instant appeal.

## II. Securities Law Claim

 Black contends that his participation in PERS constituted an "investment con-

---

1. Although the district court denominated its decision a dismissal for lack of subject matter jurisdiction, we believe that more properly the judgment is based upon a failure to state a claim. See Fed.R.Civ.P. 12(b)(6). The district court's memorandum indicates that it addressed the merits of whether appellant had established the prerequisites for each of its claims: viz., the requirement of a "security" as a condition to coverage by the federal securities laws and the requirement of a deprivation of life, liberty, or property as a condition for assertion of a viable due process claim. As the Supreme Court has written:

> Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. . . . The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

Bell v. Hood, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). There is no claim here that Black's allegations were frivolous or made solely to obtain federal jurisdiction.

Of course, since federal jurisdiction was premised on a federal question, the failure to state a claim meant that there was no question properly before the court, and, a fortiori, no federal question. But as this court has written:

> [W]hen a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous.

Timberlane Lumber Co. v. Bank of America, N.T. & S.A., 549 F.2d 597, 602 (9th Cir. 1976); see Int'l Bhd. of Teamsters v. Daniel, —— U.S. ——, 99 S.Ct. 790, 59 L.Ed.2d —— (1979); Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 430 (9th Cir. 1978).

The district court's judgment confirms this reading of its decision. The district court wrote:

> It is Ordered and Adjudged Judgment is hereby entered for the Defendants and against the Plaintiff.

Had the district court meant only to dismiss for lack of subject matter jurisdiction, such a judgment on the merits would be inappropriate. See Jones v. Brush, 143 F.2d 733, 735 (9th Cir. 1944). We thus conclude that the district court determined that Black had failed to state a claim under Rule 12(b)(6).

After the Timberlane Lumber Co. court determined that the judgment there was for failure to state a claim and not for lack of subject matter jurisdiction, it next concluded that because the district court had papers before it beyond the pleadings, there was in fact a "speaking motion" subject to Rule 56. 549 F.2d at 602. We reach the same conclusion here. See part IV infra.

tract" within the meaning of the federal securities laws and therefore he is entitled to the protection of those laws.[2] We disagree.

In *International Brotherhood of Teamsters v. Daniel,* —— U.S. ——, 99 S.Ct. 790, 59 L.Ed.2d —— (1979), the Supreme Court determined that participation in a noncontributory, compulsory private pension plan did "not comport with the commonly held understanding of an investment contract," and thus did not implicate the federal securities laws. *Id.* at ——, 99 S.Ct. at 796. The Court found that the pension plan did not meet the definition of investment contract first enunciated in *SEC v. W. J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), and reaffirmed in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975): ."[T]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." —— U.S. at ——, 99 S.Ct. at 796.[3]

Both this court and the Supreme Court have noted that while the *Howey* test has two components—the "investment of money" and an expectation of "profits to come solely from the efforts of others"—the latter is the more critical factor. The Supreme Court wrote in *Daniel*: "As we observed in *Forman,* the 'touchstone' of the

*Howey* test 'is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.'" *Id.* at ——, 99 S.Ct. at 797; *see United Sportfishers v. Buffo,* No. 75–2475, (9th Cir. Nov. 6, 1978), slip op. at 3601; *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 432 (9th Cir. 1978).

■ Although PERS is contributory, Cal.Gov't Code §§ 20600–20614, Black's participation therein does not involve a "reasonable expectation of profits" to be derived from the efforts of others. The California legislature's purpose in enacting PERS was not to provide an investment opportunity. *See* Cal.Gov't Code § 20001; *Quintana v. Board of Administration,* 54 Cal.App.3d 1018, 1021, 127 Cal.Rptr. 11, 13 (1976). Under state law participation in PERS is considered a part of the employee's compensation for service to the state. *See Miller v. State,* 18 Cal.3d 808, 814–15, 135 Cal.Rptr. 386, 389–90, 557 P.2d 970, 973–74 (1977). Moreover, PERS benefits are determined by a statutory formula and not by the income or "profit" made by PERS. *See* Cal.Gov't Code § 20611. And as a non-profit operation, any income earned by PERS must either be credited to contributions or held in reserve against later deficiencies. Cal.Gov't Code § 20203. Further, Black's

---

**2.** In *Int'l Bhd. of Teamsters v. Daniel,* —— U.S. ——, 99 S.Ct. 790, 59 L.Ed.2d —— (1979), the Supreme Court reaffirmed that "[t]he definition of a 'security' in [the Securities Act of 1933 and Securities Exchange Act of 1934] is virtually identical and, for the purposes of this case, the coverage of the two Acts may be regarded as the same." *Id.* at ——, 99 S.Ct. at 795.

**3.** After concluding that the Teamster's pension plan did not satisfy either component of the *Howey* test, the Court noted two other factors. First, *neither Congress nor the SEC had indicated,* prior to the *Daniel* suit, that noncontributory, compulsory pension plans should be considered securities. —— U.S. at ——, 99 S.Ct. 790. Although the Court was discussing the noncontributory scheme before it, and although PERS involves employee as well as employer contributions, *see* Cal.Gov't Code §§ 20603, 20741, the Court's conclusion appears equally applicable to the instant case. *See Daniel,* ——

U.S. at —— n.21, 99 S.Ct. 790. Moreover, Black has not presented any evidence to the contrary to either this court or the district court.

The Court also noted that passage of a federal statute specifically designed to protect employees' interests in pension plans "undercuts all arguments for extending the Securities Acts to noncontributory, compulsory pension plans." *Id.* at ——, 99 S.Ct. at 802; *see* Employee Retirement Income Security Program, 29 U.S.C. § 1001 *et seq.* While "government plans" are exempted from the coverage of this law, 29 U.S.C. § 1003(b)(1), we believe the extensive state regulation and control of PERS also constitutes a formidable factor militating against extending the federal securities laws to cover PERS. *See United Sportfishers v. Buffo,* No. 75–2475, n.3 (9th Cir. Nov. 6, 1978), slip op. at n.3.

participation in PERS was compulsory as an incident to his employment, Cal.Gov't Code § 20014; he thus did not "choose" to participate because of a reasonable expectation of profit from the effort of others. Finally, as a state program PERS lacks the element of economic risk usually associated with investments. *See United California Bank v. THC Financial Corp.,* 557 F.2d 1351, 1358–59 (9th Cir. 1977). Because the key factor indicating an investment—the reasonable expectation of entrepreneurial profit—is absent here, we conclude that Black's participation in PERS does not constitute an "investment contract" or "security" within the meaning of the federal securities laws.[4]

### III. *Due Process Claim*

Appellant argues next that the state has deprived him of "property" without a hearing and other elements of due process of law in contravention of the fourteenth amendment. He suggests that the change in retirement age breached a contractual obligation constituting "property."

In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a discharged city employee contended that his due process rights had been violated by his termination. He claimed, *inter alia,* that he had a property interest in continued employment. In rejecting that claim, the Supreme Court wrote:

A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.

*Id.* at 344, 96 S.Ct. at 2077 (footnotes omitted); *see Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The California Supreme Court has determined that under California law the change in mandatory retirement age did not implicate any property interests within the meaning of the due process clause. In *Miller v. State,* 18 Cal.3d 808, 135 Cal.Rptr. 386, 557 P.2d 970 (1977), a former state employee challenged the reduction in mandatory retirement age also challenged in this action. In response to the contention that the modification in age violated the due process clauses of the federal and state constitutions, the California Supreme Court held that

plaintiff had no vested contractual right to remain in public employment beyond the age of retirement established by the Legislature. Upon being required by law to retire at age 67 rather than age 70, plaintiff suffered no impairment of vested pension rights since he had no constitutionally protected right to remain in employment until he had earned a larger pension at age 70.

*Id.* at 818, 135 Cal.Rptr. at 392, 557 P.2d at 976. Since state law is determinative of the existence of a property interest in employment, *Miller* compels the conclusion that the change in mandatory retirement age did not implicate any constitutionally protected right in life, liberty, or property. Accordingly, we affirm the dismissal of the due process claim.[5]

### IV. *Leave to Amend*

Appellant argues lastly that the judgment below should be reversed and the

---

**4.** Because of our conclusion *supra,* we need not determine if Black's participation in PERS might satisfy the "investment of money" component of the *Howey* test.

**5.** Appellant claims that the district court improperly held that the absence of an "investment contract" within the meaning of the federal securities laws meant that appellant did not have any contractual rights to continued employment and corollary pension benefits. Appellant argues that even if there were no investment contract for federal securities law

purposes, he might still have some contractual rights. As noted *supra,* however, *Miller* established that the change in retirement age did not implicate any contract or property interests of appellant within the meaning of the due process clause. Therefore, appellant cannot state a due process claim. We thus affirm the rejection of the due process claim, albeit on a rationale different from the district court's. *See United States v. Crain,* 589 F.2d 996, 1001 n.9 (9th Cir. 1979) and cases cited therein.

cause remanded to the district court to allow him to amend his complaint to state a claim under 18 U.S.C. §§ 371, 1341, the criminal mail fraud statutes.[6] He asked for leave to amend his complaint for the first time in his reply brief; he made no such request in the district court. Appellant notes that leave to amend should be freely given when justice so requires. Fed.R. Civ.P. 15(a).

In *Jackson v. American Bar Association,* 538 F.2d 829 (9th Cir. 1976), plaintiffs filed a complaint alleging unconstitutional discrimination. Defendants filed motions to dismiss. The district court granted defendants' motions on the ground, *inter alia,* that plaintiffs had not stated a claim upon which relief could be granted. After agreeing that plaintiffs had not properly stated a claim, we wrote:

> [A]ppellants complain that they were not permitted to amend their complaint and urge that such an option be tendered now. The reason urged is that since the case was decided below on a motion to dismiss, the plaintiffs should have been allowed to amend under Fed.R.Civ.P. 15(a). But where a motion to dismiss is supported by affidavits on both sides, it becomes a speaking motion and is treated as a motion for summary judgment. [Citations omitted.] Furthermore, the record does not disclose any effort to amend. Under the circumstances here, the request to remand with instructions to permit amendment comes too late.

*Id.* at 833.

▮ In the present case as in *Jackson,* both parties filed papers other than the pleadings regarding defendants' motion to dismiss; the district court did not exclude those papers in reaching its result. Additionally, here plaintiff specifically moved for summary judgment. Therefore, the judgment in the present case must properly be considered a motion granting summary judgment in favor of defendants. Fed.R. Civ.P. 12(b); *Jackson,* 538 F.2d at 833;

*Schnepp v. Hocker,* 429 F.2d 1096, 1098 n.1 (9th Cir. 1970); *Potrero Hill Community Action Committee v. Housing Authority,* 410 F.2d 974, 974 (9th Cir. 1969). As in *Jackson,* here there was no effort to amend the complaint prior to this appeal. We thus follow *Jackson* in affirming the judgment of the district court.

AFFIRMED.

---

**6.** Given our resolution *infra,* we do not consider whether or not these criminal statutes afford a private right of action.