Ralph B. PEYTON and Doreen Peyton, Plaintiffs-Appellants,

v.

MORROW ELECTRONICS, INC., an Oregon Corporation, Defendant-Appellee.

No. 77–1121.

United States Court of Appeals, Ninth Circuit.

Oct. 10, 1978.

Rehearing Denied Dec. 8, 1978.

Laurence L. Janke (argued), Portland, Or., for plaintiffs-appellants.

Lawrence N. Brown (argued), of Brown, Burt & Swanson, Salem, Or., for defendant-appellee.

**414**

Before CHAMBERS, KILKENNY and HUG, Circuit Judges.

CHAMBERS, Circuit Judge.

Peyton appeals from partial summary judgment in favor of defendant Morrow Electronics, Inc., dismissing Counts 1 and 2, in which he claims that Morrow violated the 1933 Securities Act and the 1934 Securities Exchange Act (15 U.S.C. §§ 77q, 78j), and Counts 3 and 4 in which he alleges violation of certain Oregon securities statutes (Oregon Revised Code, §§ 59.055, 59.115). He does not claim that there was any error in the trial of Count 5.

Appellant began work for Morrow in 1972 as a salesman. In 1973, he became marketing manager under a written contract that gave him a base cash salary plus a percentage, on a sliding scale, of gross sales. Nothing was said in the contract of stock purchase rights. On March 29, 1974, following contract negotiations in which stock purchase rights had been discussed, Morrow's president signed a memorandum stating:

"To confirm our recent conversation regarding your future employment at Morrow Electronics, the company plans the following:

"To revise your current employment contract and extend the agreement one year.

"To add a stock purchase clause, allowing you to purchase stock for services at a total of 2%, at ½ of 1% per year of employment.

"All of this subject to the advice of Morrow Electronics' lawyer as to the best tax situation for all concerned.

"Your salary also will be adjusted to $1200 per month, starting April 1, 1974.

"I hope we will have all this in final form by May 1, 1974."

It is appellant's position that the 1973 contract, or the 1974 memorandum, or both, constituted an "investment contract" so as to bring him within the protection of the federal securities statutes. *Securities and Exchange Commission v. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), defines an investment contract as a "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. 298–99, 66 S.Ct. 1103. This definition applies not only to the Securities Act of 1933 (15 U.S.C. § 77b(1)) but also to the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(10)). *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

Under the 1973 contract appellant was entitled to receive cash salary and a percentage of gross sales in return for his services. The 1974 memorandum would add stock purchase rights. It is drafted in terms of a contingency that did not occur; appellee's uncontroverted affidavit states that the company tax attorney recommended against the stock purchase plan and that it was never adopted. Appellant was terminated in July, 1974, without the "final form" (referred to in the memorandum) ever having been executed and no stock purchase plan ever having been adopted as to him or any other employee. There is no need to rule on the legal effect of the 1974 memorandum as it is clear that appellant cannot meet the requirements of the *Howey* definition. Thus, even assuming for purposes of argument that the 1974 memorandum created legal rights in appellant, it contemplated no "investment of money" by him. His only investment was of his services * and he offers no convincing authority for the theory that his services constituted an "investment of money" because he believes he was working for less than he was worth.

---

* We do not speculate on the effect of an agreement under which the plaintiff receives a percentage of "profits" rather than "sales".

Moreover, we cannot find that this arrangement complied with *Howey's* test that the plaintiff be "led to expect profits solely from the efforts of the promoter or a third party." In *Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482–83 (9th Cir. 1973), this court adopted a liberal approach to the interpretation of the word "solely" as it had been used in *Howey*. In *Turner* the arrangement was one by which self improvement courses were offered to the public for an investment of money and then the investors were permitted to participate in the promotion of the courses and receive payment on a type of commission basis. We held that the scheme was no less an investment contract merely because the investor was permitted to perform those services if he chose to. We stated that "solely" was not to be defined literally but that it should be "construed realistically, so as to include within the definition those schemes which involve in substance, if not [in] form, securities." Our test was:

". . . whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." 474 F.2d at 482.

This case bears little analogy to *Turner*. Here appellant was himself the marketing manager of the purported "promoter". He cannot claim that he expected profits "solely" from the efforts of his employer and he cannot claim that his own managerial efforts were nominal and did not affect the failure or success of Morrow Electronics. The arrangement on which appellant relies cannot meet the *Howey* definition, even as broadened by *Turner*. There is no "investment contract" within the meaning of the securities acts and the district court properly granted summary judgment as to counts 1 and 2 of the amended complaint. Counts 3 and 4, based on a pendant jurisdiction theory, were also properly the subject of summary judgment in the district court's discretion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Affirmed.