**DE LUZ RANCHOS INVESTMENT, LTD., Nos. 30–31, 40–41, 70–71, 45, 75, 6 of Parcel Map 20–1 and De Luz Ranchos Investment, Ltd., Nos. 1, 8, 11–18, 15, 16, 17, 21, 22, 23, 24, 26, 31–1, 32, 37, of Parcel Map 28, California Limited Partnerships, Plaintiffs-Appellants,**

v.

**COLDWELL BANKER & COMPANY, a California Corporation, Defendants-Appellees.**

No. 76–2615.

United States Court of Appeals, Ninth Circuit.

Nov. 28, 1979.

John F. Banker, Tiburon, Cal., William M. Ziering, San Francisco, Cal., for plaintiffs-appellants.

Edmund L. Regalia, Richard Ardoin, William H. G. Norman, San Francisco, Cal., Shelly J. Shafron, Los Angeles, Cal., argued, for defendants-appellees; Miller, Starr & Regalia, Oakland, Cal., on brief.

Before TRASK, ANDERSON and HUG, Circuit Judges.

HUG, Circuit Judge:

De Luz Ranchos Investment, Ltd. ("De Luz"), a group of limited partnerships, brought this action against Coldwell, Banker & Co. ("Coldwell"), W. Brad Smith, and Kaiser-Aetna and several of its affiliated firms ("Kaiser"). De Luz alleges violations of the Securities Exchange Act of 1934 ("Securities Act"), 15 U.S.C. § 78j and Rule 10b–5, and of the Interstate Land Sales Full Disclosure Act ("Land Sales Act"), 15 U.S.C. §§ 1701–20. The complaint also alleges three pendent state claims.

De Luz appeals the district court's order granting summary judgment for the defendants. Because we find that there is a genuine issue of material fact with respect to the claim under the Land Sales Act, we reverse.

## I.

In 1969 Kaiser acquired an unimproved, 97,500-acre parcel of land in Southern California now known as Rancho California. As part of a plan to develop the acreage, Kaiser divided the land into smaller parcels with separate names. There is substantial

evidence in the record that the entire Rancho California tract was promoted as an integrated unit suitable for development.

De Luz is a group of limited partnerships formed to facilitate investment in Rancho California by the limited partners. W. Brad Smith, alleged to have aided Kaiser and Coldwell in defrauding the partnerships, acted as the sole general partner of each of the De Luz partnerships. Lots within two of the "Santa Rosa Ranches" tracts of Rancho California were sold to De Luz between 1971 and 1973 at approximately three times the market value at the time of sale. The sales were allegedly made in a "double escrow" arrangement through which Kaiser technically sold to Smith, and Smith instantaneously conveyed to the partnerships. Although Kaiser's promotional materials represented that Kaiser would develop common facilities for the benefit of a planned community to be created within Rancho California, the land sale contracts obligate the seller to do no more than convey good title. Coldwell acted as Kaiser's sales agent in several of the transactions with De Luz.

Charging that Coldwell and the other defendants engaged in fraudulent misrepresentation in connection with the sale of land in Rancho California, De Luz brought this action against Kaiser, Coldwell, and Smith for damages and declaratory relief. De Luz alleged two federal causes of action under the Securities Act and the Land Sale Act, and three state causes of action for fraud, breach of trust, and rescission. On Cold-

well's motion to dismiss pursuant to Fed.R. Civ.P. 12(b), the district court received and considered matters outside the pleadings. The court issued an order dismissing the complaint with respect to all defendants.[1]

Pending De Luz's appeal from the judgment of dismissal, De Luz entered into a settlement agreement with Kaiser and Smith, and this court dismissed the appeal with respect to those defendants. Coldwell is the sole remaining appellee.

We have determined from the record that the district court in substance granted summary judgment for the defendants for failure to state a claim under the federal causes of action, *see* Fed.R.Civ.P. 12(b),[2] and dismissed the pendent state causes of action because no federal claim survived, *see Peyton v. Morrow Electronics, Inc.*, 587 F.2d 413, 415 (9th Cir. 1978). Therefore, on appeal we must determine whether the district court correctly found that, viewing the evidence in the light most favorable to De Luz, De Luz has presented no genuine issue of material fact and Coldwell is entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56(c) & (e); *Abramson v. University of Hawaii*, 594 F.2d 202, 208 (9th Cir. 1979).

## II.

### Securities Act

Title 15 U.S.C. § 78j(b) and Rule 10b–5 prohibit the use of fraudulent or deceptive devices in connection with the

---

1. There is some question whether the district court's order of dismissal satisfied the technical requirements of Fed.R.Civ.P. 58 for entry of final judgment. However, the court issued its final order of dismissal only after De Luz filed its intention not to amend the complaint, and it is clear that the order was intended to be a final disposition of the matter. *See Blevins v. Ford*, 572 F.2d 1336, 1338 (9th Cir. 1978). Moreover, the parties have treated the dismissal as an appealable judgment. Under those circumstances, this court has appellate jurisdiction under 28 U.S.C. § 1291. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); *Alaska v. Andrus*, 591 F.2d 537, 539–40 (9th Cir. 1979).

2. Although the order of the district court stated that the complaint was dismissed for "lack of federal jurisdiction," the court reviewed the merits of the action; therefore, the disposition is properly viewed as a dismissal under Fed.R. Civ.P. 12(b)(6) for failure to state a claim. *See Black v. Payne*, 591 F.2d 83, 86 n.1 (9th Cir. 1979); *Sacks v. Reynolds Securities, Inc.*, 193 U.S.App.D.C. 80, 85, 593 F.2d 1234, 1239 (D.C. Cir.1978). Because the district court considered matters outside the pleadings, "the judgment must properly be considered as the grant of summary judgment in favor of defendants." *Smith v. Gross*, 604 F.2d 639 (9th Cir. 1979).

purchase or sale of a security.[3] Although the district court did not specifically state the basis for its dismissal of the Securities Act claim, the record indicates that the court found that the land sale contracts were not "securities" covered by the Securities Act. De Luz argues that the sale agreements are "investment contracts" and therefore are regulated by the Act as securities.

The term "investment contract" is included within the Act's definition of "security." 15 U.S.C. § 78c(10). Under the test announced by the Supreme Court in *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), an investment contract is an agreement that calls for an investment of money in a common enterprise with an expectation of profits solely from the efforts of others. *Id.* at 298–301; *Teamsters v. Daniel*, 439 U.S. 551, 558, 99 S.Ct. 790, 795–796, 58 L.Ed.2d 808, 815–16 (1979). In addressing the question whether a contract constitutes a security, the court must look to the economic realities underlying the transaction. *Id.* 439 U.S. at 558, 99 S.Ct. at 796, 58 L.Ed.2d at 816; *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849–852, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

In this case, there is no doubt that De Luz invested money in the realty transactions with Kaiser. The more difficult questions are whether De Luz was involved in a common enterprise with Kaiser and whether De Luz was led to expect profits from the efforts of others.[4]

In *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 54 (1973), this court liberally interpreted the final requirement of the *Howey* test, which literally calls for an expectation of profits "solely" from the efforts of others:

> [W]e adopt a more realistic test, whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.

*Id.* at 482. In the same case, this court defined the term "common enterprise":

> A common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.

*Id.* at 482 n.7.

In arguing that the land sale contracts in this case are investment contracts, De Luz asserts that Kaiser's marketing material promoted Rancho California as a passive investment which would appreciate in value as a result of Kaiser's development of common facilities. Additionally, there is evidence in the record that Kaiser represented that it would facilitate the resale of investor's parcels, minimizing the efforts required by the investor.

---

3. Section 78j(b) provides:
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   . . . . .

   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
   Rule 10b–5 provides:
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

   (a) To employ any device, scheme, or artifice to defraud,
   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
   17 C.F.R. § 240.10b–5 (1979).

4. Although Coldwell is the sole remaining defendant, to determine whether the district court properly dismissed the Securities Act claim against Coldwell we must examine the nature of the transaction entered into between Kaiser and De Luz.

On the other hand, it is undisputed that the land sale contracts obligate Kaiser to do no more than transfer title. There is no reference in the contracts to an obligation on the part of Kaiser to develop any land. At most, Kaiser represented in its promotional materials that it would develop part of the retained land in this huge tract, but no timetable for the development was set. De Luz assumed complete control over the land that it purchased, and Kaiser did not represent that it would develop, improve, or manage those parcels. Although De Luz purchased the land for considerably more than the market value, the representations in the promotional material were not essential to the existence of valuable consideration for the purchase; De Luz obtained title to land on which it could develop or improve as it chose. Finally, Kaiser did not promise to distribute profits to De Luz from the development of Rancho California; at most, De Luz expected to profit from Kaiser's development only in the appreciation of its parcels because of proximity to that development.

Considering all the circumstances, we conclude that De Luz has failed to show the existence of an investment contract. In light of the tenuous relationship between the value of the purchased land and Kaiser's promotional representations, we cannot say that Kaiser provided the essential managerial efforts affecting the success of De Luz's enterprise, as required under the final element of the *Howey* test. Cf. *Woodward v. Terracor*, 574 F.2d 1023 (10th Cir. 1978) (no contractual obligation to develop surrounding land); *Fargo Partners v. Dain Corp.*, 540 F.2d 912 (8th Cir. 1976) (purchaser of apartment complex retained ultimate managerial control over complex);

*Davis v. Rio Rancho Estates, Inc.*, 401 F.Supp. 1045, 1049–50 (S.D.N.Y.1975). Moreover, in light of the facts that De Luz assumed control over its parcels and that Kaiser retained no interest in those parcels other than a deed of trust to secure payment, we must conclude that the fortunes of Kaiser and De Luz were not so closely interwoven as to create a common enterprise. Cf. *Woodward*; *Brodt v. Bache & Co.*, 595 F.2d 459 (9th Cir. 1978) (broker for discretionary commodities account and investor were not engaged in a common enterprise).

We recognize that this case poses a close question of law; the land sale agreement between De Luz and Kaiser lies near the fringe of those transactions that have been found to be regulated by the Securities Act as investment contracts. However, this action would extend the reach of the Securities Act too far. Viewing the evidence in the light most favorable to De Luz, we conclude that the district court properly granted summary judgment for Coldwell on the Securities Act claim.

### III.

### Land Sale Act

Title 15 U.S.C. § 1703(a)(2) prohibits the use of misrepresentation or fraudulent devices by a developer or agent in connection with the sale of any lot within a subdivision.[5] The district court apparently dismissed the Land Sale Act claim on the ground that the transactions between Kaiser and De Luz were exempted from regulation under the Act pursuant to 15 U.S.C. § 1702(a)(2). That subsection exempts from regulation "the sale or lease of lots in a subdivision, all of which are five acres or more in size."

---

5. Section 1703(a)(2) provides:
   (a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—

   . . . . .
   (2) in selling or leasing, or offering to sell or lease, any lot in a subdivision—
   (A) to employ any device, scheme, or artifice to defraud, or

   (B) to obtain money or property by means of a material misrepresentation with respect to any information included in the statement of record or the property report or with respect to any other information pertinent to the lot or the subdivision and upon which the purchaser relies, or
   (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser.

The parties disagree with respect to what areas of land should be viewed as the "subdivision" for purposes of applying section 1702(a)(2). Coldwell argues that the appropriate "subdivision" is the "Santa Rosa Ranches" in which all of the lots are more than five acres in size. De Luz argues that the "subdivision" is the entire Rancho California development, in which some of the lots are less than five acres in size. The term "subdivision" is defined in section 1701(3):

> "[S]ubdivision" means any land . . . which is divided or proposed to be divided into fifty or more lots . . . for the purpose of sale or lease as part of a common promotional plan and where subdivided land is offered for sale or lease by a single developer, or a group of developers acting in concert, and such land is . . . advertised as a common unit or by a common name such land shall be presumed . . . as being offered for sale or lease as part of a common promotional plan . . . .

De Luz presented to the district court substantial evidence that the entire Rancho California development is divided into over fifty lots and was promoted under a common name by a group of promoters acting in concert as a part of a common promotional plan. Because De Luz has presented a genuine factual dispute with respect to this question, the Rancho California development should be viewed as the relevant subdivision.

The remaining question is whether the final clause in section 1702(a)(2), providing an exemption for a parcel that contains lots "all of which are five acres or more in size," applies to the entire subdivision or merely to the parcel conveyed in the transaction. The language of the statute is ambiguous. De Luz does not dispute that all of the lots within the parcels that it bought are greater than five acres in size. Therefore, if the final clause in section 1702(a)(2) applies only to the parcels conveyed, the transaction will be exempt from regulation under the Act; if the clause applies to the entire Rancho California subdivision, the exemption does not apply.

The disclosure requirements of the Land Sales Act are designed to prevent fraud in interstate land transactions, and the Act should be liberally construed in favor of broad coverage to effectuate its remedial purpose. See McCown v. Heidler, 527 F.2d 204, 207 (10th Cir. 1975). In accordance with that policy, we narrowly construe the exemption provided in section 1702(a)(2) to exempt a transaction from coverage only when each and every lot in the relevant subdivision is five acres or more in size.

Although the legislative history of the Act is brief and inconclusive, we note that our interpretation is consistent with a statement made by the Senate committee reporting the bill to the Senate floor:

> There are several exemptions, including transactions involving cemetery lots and subdivisions in which all the lots are to be 5 acres or larger in size.

S.Rep.No.1123, 90th Cong., 2d Sess. 110 (1968). In addition, the Office of Interstate Land Sales Registration, the federal agency responsible for the administration of the Act,[6] shares our interpretation of section 1702(a)(2). See Note, *The Interstate Land Sales Full Disclosure Act: An Analysis of Administrative Policies Implemented in the Years 1968–1975*, 26 Cath.U.L.Rev. 348, 366 & n.111 (1977) (and agency advisory opinions cited therein); Walsh, *The Role of the Federal Government in Land Development Sales*, 47 Notre Dame Law. 267, 269–70 (1971). Several commentators are in accord.[7]

---

**6.** The statutory authority for administering the Land Sales Act is vested with the Office of Interstate Land Sales Registration as the delegatee of the Secretary of Housing and Urban Development. *See* 15 U.S.C. § 1715(a); 24 C.F.R. § 1700.10 (1979). A developer may obtain an exemption advisory opinion from the Office, as delegatee of the Secretary, advising whether a particular method of sale or lease is exempt from the requirements of the Act. 24 C.F.R. § 1710.15 (1979).

**7.** *E. g.*, Feferman, *Interstate Land Sales Full Disclosure Act*, 33 Tex.B.J. 625, 628 (1970) ("It is clear from the wording of this exemption that each and every lot in the subdivision . . .

Because we find that section 1702(a)(2) does not exempt the transactions in this case from coverage, we reverse the district court's grant of summary judgment for Coldwell on the Land Sales Act claim.

## IV.

### Other Claims and Contentions

Coldwell raises other contentions, including assertions that the statute of limitations has run and that the De Luz partnerships have no standing to represent the interests of the individual investors. However, there is no indication that the district court passed on those contentions in granting summary judgment, and we will not address those issues for the first time on appeal. *See Hector v. Wiens*, 533 F.2d 429, 433–34 (9th Cir. 1976). Those contentions may be reasserted before the district court on remand. See *id.*

On remand for further consideration of the Land Sales Act claim, the district court will at that point determine, in its discretion, whether to exercise jurisdiction over the pendent state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## V.

The judgment of the district court is reversed, and the action is remanded to the district court for further proceedings consistent with this opinion.

must be of the required size or larger."); Morris, *The Interstate Land Sales Full Disclosure* *Act: Analysis and Evaluation*, 24 S.C.L.Rev. 331, 343 (1972).