Francisco NOA et al.,
Plaintiffs–Appellants,

v.

KEY FUTURES, INC. et al.,
Defendants–Appellees.

No. 77–2334.

United States Court of Appeals,
Ninth Circuit.

July 10, 1980.

William K. Wilburn, San Jose, Cal., for plaintiffs–appellants.

Martin J. Spear, Los Angeles, Cal., for defendants–appellees.

Before KENNEDY and HUG, Circuit Judges, and SMITH,* District Judge.

PER CURIAM:

In this action the appellants (plaintiffs below) charged the defendants with violations of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*, and the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* The district court considered matters outside of the complaint and granted defendants' motion for summary judgment.

A. *Jurisdiction*

Before turning to the merits of this appeal, we must first resolve a jurisdictional problem not raised by the parties. The

---

* Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

Union Bank and Thomas F. Moore were two of several defendants in this case. As to them a summary judgment was granted on March 30, 1976. A timely notice of appeal was filed by the plaintiffs. That appeal was dismissed by this court because the judgment ran against less than all of the parties and did not contain the certificate required by Fed.R.Civ.P. 54(b). On April 15, 1977, the parties filed a stipulation that a judgment identical with the initial judgment, but containing the certification required by rule 54(b), might be entered, and on April 27, 1977, the district court entered the stipulated judgment. The appellants filed a notice of appeal on June 1, 1977, five days beyond the time period provided for in Fed.R.App. P. 4. On June 14, 1977, the parties filed a stipulation which states:

> It is hereby stipulated by and between the parties hereto, through their respective counsel, that the record and briefs in this appeal may be transferred to a new appeal, notice of which was served June 1, 1977.
>
> It is further stipulated that all matters and proceedings in this appeal No. 76–2079 be preserved and used in the new appeal, docket number to be assigned.

■ The first notice of appeal cannot be considered as a premature notice of appeal because it was rendered null by the dismissal of the appeal to which it related. *Rabin v. Cohen*, 570 F.2d 864 (9th Cir. 1978). The second notice of appeal is not effective because it was not timely filed. We believe, however, that the April 15th stipulation to the entry of a new judgment serves as an effective notice of appeal.

In *Rabin, supra*, a stipulation and motion filed in the court of appeals shortly after entry of judgment by the district court was treated as a timely notice of appeal where no normal notice of appeal had been filed. The court held:

> [D]ocuments which are not denominated notices of appeal will be so treated when they serve the essential purpose of showing that the party intended to appeal, are served upon the other parties to the litigation, and are filed in court within the time period otherwise provided by Rule 4(a).

*Id.* at 866.[1] This principle finds support in several prior cases. Thus, motions for leave to appeal in forma pauperis have been held to be sufficient evidence of the intent to appeal. *Tillman v. United States*, 268 F.2d 422 (5th Cir. 1959); *Roth v. Bird*, 239 F.2d 257 (5th Cir. 1956); *Des Isles v. Evans*, 225 F.2d 235 (5th Cir. 1955). Similarly, in *Carter v. Campbell*, 285 F.2d 68 (5th Cir. 1960), an order granting the appellant leave to proceed on the record made in the original appeal was deemed sufficient. See generally cases cited in *Rabin, supra*.

The only apparent purpose of the April 15th stipulation was to permit a proper appeal of the district court's judgment. The plaintiffs intended to appeal, the defendants had notice of the plaintiffs' intent to appeal and believed plaintiffs were appealing, and all parties proceeded upon the assumption that a viable appeal was pending.[2] The June 14th stipulation transferring the briefs and records to the new appeal confirms this conclusion. It would of course have been preferable for appellants'

1. The last clause of this test prevents the parties' stipulation of June 14, 1977, preserving the briefs and record, from constituting adequate notice, as that stipulation was entered two weeks after the untimely notice of appeal. That agreement may, however, be referred to in determining the intent of the parties in stipulating to the entry of a new judgment.

In a supplemental letter filed with this court the appellants claim that on February 17, 1977, more than two months before the district court's entry of judgment on counsel for Key Futures on April 27th, the appellees agreed "to stipulate to whatever was necessary to get this

appeal properly before the Ninth Circuit." The appellants claim that the agreement was memorialized in a response to an order to show cause filed in the district court on February 24, 1977. This document is perhaps some evidence that opposing counsel had notice of the appellants' intent to appeal the case again, but by itself it is an insufficient substitute for a proper notice of appeal.

2. We do not intimate that the parties may by consent confer jurisdiction on this court where we are not authorized to hear the case.

counsel to have complied with the rules more carefully, but under these circumstances we believe that the stipulation to entry of the new judgment was a sufficient notice of appeal. Since it was signed before the judgment was entered, it was premature, but such a premature notice of appeal is effective, see *Song Jook Suh v. Rosenberg*, 437 F.2d 1098 (9th Cir. 1971), and cases cited therein.

## B. *The Merits*

Key Futures offered silver bars for sale and, by high–pressure sales efforts, touted bar silver as a superior investment. The documents used in the sale were a Contract of Purchase (Contract) and a Confirmation and Certificate of Ownership (Confirmation). The Contract evidenced an obligation of Key Futures to sell and the customer to buy a given quantity of silver at a given price. Key Futures agreed to initiate delivery on full payment of the purchase price. It guaranteed that the silver would be .999 pure and agreed that at the customer's request it would store the silver free for one year. It disavowed any guaranty or warranty as to the fluctuations of the silver market. The Confirmation largely confirmed the Contract, but in addition it acknowledged receipt of the money. It purported to modify the Contract by providing that delivery of the silver was to be within 30 days after receipt of the buyer's payment.

The sales literature represented that Key Futures would buy its silver from the Comex and then have that silver refined to achieve .999 purity, and that Key Futures would buy the silver back at any time at the spot price quoted in the Wall Street Journal. Copies of a letter to Key Futures from the defendant Union Bank was included with some of the sales material. The letter read:

> This is to acknowledge the fact we have opened an account entitled Key Futures, Inc., Clients Trust Account, which will be used by you to deposit funds intended for the purchase of silver sold by Key Futures, Inc.

> Thank you for the opportunity to do business with your firm and continued best wishes on a successful operation.

This letter forms the basis of the complaint against Union Bank and Thomas F. Moore.

The principal question on this appeal is whether what was sold here is a security. The Contract is a security under the Securities Act of 1933 and the Securities and Exchange Act of 1934 if it is an "investment contract." 15 U.S.C. § 77b(1); 15 U.S.C. § 78c(a)(10). In *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946), the Supreme Court held that an agreement constitutes an investment contract if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *See also United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). In *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), the court held that the profits need not come "solely" from the efforts of the promoters or others, but that the test was "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise."

Applying these standards to the facts here, we hold that no investment contract was created. Once the purchase of silver bars was made, the profits to the investor depended upon the fluctuations of the silver market, not the managerial efforts of Key Futures. The decision to buy or sell was made by the owner of the silver. *See De Luz Ranchos Investment, Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297 (9th Cir. 1979). See also *Berman v. Dean Witter & Co., Inc.*, 353 F.Supp. 669 (C.D.Cal.1973) and cases cited therein; *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 465 F.Supp. 585, 589 (M.D.La.1979), *remanded on other grounds*, 600 F.2d 1189 (5th Cir. 1979), and cases cited therein (commodity contract involving nondiscretionary account is not a security).

This is not a case such as *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943), where the assignors of small acreage oil and gas leases agreed to drill a test well in the vicinity, or *Glen–Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027 (2d Cir. 1974), where the promoters sold whiskey warehouse receipts, but in addition provided their expertise in the selection of whiskey and casks, the finding of a market for whiskey, and the arrangements for warehousing and insurance. This case is also distinguishable from *Smith v. Gross*, 604 F.2d 639 (9th Cir. 1979), relating to earthworms, and *Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414 (8th Cir. 1974), relating to chinchillas, where the profits and the resale market both depended upon the promoter's activities. There is a national market for silver which is not dependent upon Key Futures. Thus, although the buy–back agreement here saved the customer a brokerage fee, it does not indicate that the plaintiffs were engaged in a common enterprise with any defendant.

Plaintiffs admittedly bore the risk that during the thirty day period which defendants had to initiate delivery of the silver, the defendants might become insolvent. From this fact plaintiffs argue that they were engaged in a common enterprise with Key Futures, and that the success of the venture depended primarily on the efforts of those other than investors. We cannot agree. *Cf. Forman, supra*, 421 U.S. at 857 n.24, 95 S.Ct. at 2063 n.24; *Brodt v. Bache & Co., Inc.*, 595 F.2d 459, 460–62 (9th Cir. 1978). In *Safeway Portland Employees' Federal Credit Union v. C. H. Wagner & Co.*, 501 F.2d 1120, 1123 (9th Cir. 1974), this court did mention the continued success and solvency of the defendant as one factor indicating that the investor was involved in a common enterprise with the defendant and that the investor expected profits to come from the efforts of others. But plaintiffs' argument proves too much. The risk they assumed was that which any buyer takes when he pays in advance for goods to be delivered in the future. *See Berman, supra.*

Purchase of the silver and the free storage do not in our opinion amount to the "undeniably significant" efforts required by *SEC v. Glenn Turner.* The method by which the silver was to be purchased by the seller did not alter the relationship of the seller and the buyers. It was Key Futures' obligation to deliver a given amount of silver of .999 purity in return for a fixed price, regardless of the method by which it acquired the silver. Apart from the risks discussed above, the buyers did not share in the profits or risks of the silver procurement. Likewise, the bank letter, while perhaps used fraudulently, did no more than indicate that a customer's money would be used for the purchase of silver. Whatever part the letter played in some fraudulent scheme of Key Futures, it did not add to or detract from the obligations between the parties.

C. *Conclusion*

We sympathize with the plaintiffs if they have fallen victims to fraud or misrepresentation, but the federal securities laws do not reach every such scheme. The judgment is affirmed as to the federal claims. The parties have mentioned only in passing the appellants' pendent state law claims against appellees. The district court's disposition of the pendent state law claims is not completely clear from the record before us. To the extent there are still state law claims pending before the district court, it should determine whether there is any reason to retain jurisdiction over them. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *Cf. Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d 1261, 1271 (9th Cir. 1979). To the extent that the district court construes its prior entry of judgment against appellants to be a dismissal of the pendent state law claims, we affirm the court's decision.

AFFIRMED in part, REMANDED in part.