**SECURITIES AND EXCHANGE COMMISSION, Appellee,**

v.

**LIFE PARTNERS, INCORPORATED and Brian D. Pardo, Appellants.**

**Nos. 95–5364, 96–5018 and 96–5090.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 20, 1996.

ON APPELLEE'S PETITION
FOR REHEARING

Before: WALD, GINSBURG, and
HENDERSON, Circuit Judges.

## ORDER

PER CURIAM:

Upon consideration of appellee's petition for rehearing, filed on August 19, 1996, and of the response thereto, it is ordered that the petition be denied.

A statement of Circuit Judge GINSBURG, joined by Circuit Judge HENDERSON, is attached.

A statement of Circuit Judge WALD dissenting from the denial of rehearing is also attached.

GINSBURG, Circuit Judge with whom Circuit Judge KAREN LeCRAFT HENDERSON joins:

In its petition for rehearing the Securities and Exchange Commission betrays a profoundly, if not a willfully, mistaken understanding of the Court's opinion. We think it appropriate expressly to reject the Commission's misstatement of the case in two respects.

First, the Commission says that the Court declared an "artificial bright-line" rule that an investment is not a security "if the efforts of promoters or others on which investors rely occur just before, rather than after, the investors commit their money." Indeed, according to the Commission, the Court holds that all pre-purchase efforts are "irrelevant." While that position may have been the one originally advanced by Life Partners, Inc., it is not the one taken by the Court.

In order to qualify as a security, an investment must have been made in an enterprise the profits of which are derived from the efforts of others. *SEC v. W.J. Howey*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). To the extent that we established any rule in applying the "efforts of others" test, we held only "that [1] pre-purchase services cannot by themselves suffice to make the profits of an investment arise predominantly from the efforts of others, and that [2] ministerial functions should receive a good deal less weight than entrepreneurial activities." 87 F.3d 536, 548. We examined both "LPI's pre-purchase services as a finder-promoter and its largely ministerial post-purchase services," and we concluded that the two in combination were not enough to establish that the investors' profits flow predominantly from the efforts of others. *Id.* Nothing in our application of the *Howey* test can reasonably be construed to suggest that pre-purchase efforts are "irrelevant."

Absent even one entrepreneurial post-purchase service—and the SEC could identify none—there simply is no on-going common enterprise involved in owning an interest in an insurance contract from which the profit depends entirely upon the mortality of the insured. *Id.* Indeed, the Commission concedes in its petition that "in other cases where pre-purchase efforts were considered, those courts also found significant post-purchase efforts." *See, e.g., Rodriguez v. Banco Central Corp.*, 990 F.2d 7, 10 (1st Cir.1993) (interest in undeveloped land not security without post-purchase managerial efforts by promoter); *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79–80 (9th Cir.1980) (same with respect to silver bars); *McCown v. Heidler*, 527 F.2d 204, 211 (10th Cir.1975) (interest in undeveloped land would not have been security but for "substantial improvements pledged by" promoters).

The second matter worthy of comment is the totally unsubstantiated assertion in the Commission's petition for rehearing that the Court has "place[d] in question the applicability of the federal securities laws to ... certain asset-backed securities," including mortgages and securitized interests in commercial real estate, which account for a vast amount of investment capital. Having leveled this astonishing charge, however, the Commission does not favor us with a single example of a formerly regulated instrument that will now escape SEC scrutiny. In fact, the Commission admits that "many asset-backed securities may be encompassed under other definitional terms in the securities laws

... and some might have sufficient post-purchase efforts" to make LPI ·distinguishable.

In contrast to an LPI viatical settlement, a mortgage pool must be managed on a continuing basis. Among the post-purchase services that should easily meet·the "efforts of others" test as we have interpreted it are: collecting late mortgage payments, initiating foreclosures, structuring and monitoring work-outs, negotiating concessions in order to avoid refinancing, and arranging for a secondary market. In the case of commercial real estate, the property must be kept in compliance with an array of tax, safety, and environmental laws; it must be advertised, leased, re-leased, improved, repaired, cleaned, heated, and perhaps resold. It seems fair to say, therefore, that the Commission's concern with the effect of this decision is, at the least, overblown.

WALD, Circuit Judge, dissenting from denial of rehearing and rehearing in banc:

Judges Ginsburg and Henderson contend that the Securities and Exchange Commission ("SEC"), in petitioning for rehearing, is mistaken when it claims that the majority decision in this case sets forth a bright-line rule to the effect that "an investment is not an 'investment contract'—and hence not a security if the efforts of promoters or others on which investors rely occur just before, rather than after, the investors commit their money," and when it predicts that this holding poses a serious potential obstacle to enforcement of the federal securities laws.· With due respect, I believe that the SEC is correct in both allegations and it is my colleagues who are mistaken.

This case arose out of an attempt by the SEC to require Life Partners, Inc. ("LPI") to register its offerings under the federal securities laws. LPI sells fractional interests in the life insurance policy of terminally ill people to investors, and markets the policies through a network of commissioned licensees. *SEC v. Life Partners, Inc.,* 87 F.3d 536, 537–39 (D.C.Cir.1996). The majority held that LPI contracts are not securities because they do not meet the *Howey* test for what constitutes an investment contract.

Under the *Howey* test, "an investment contract is a security subject to the Act if investors purchase with (1) an expectation of profits arising from (2) a common enterprise that (3) depends upon the efforts of others." *Id.* at 542; *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). As the SEC notes, the court unanimously agreed that the first two prongs of the·*Howey* test were met here. In particular, the majority noted that "horizontal commonality—defined by the pooling of investment funds, shared profits, and shared losses—is ordinarily sufficient to satisfy the common enterprise requirement" and specifically held that "pooling is in practice an essential element of the LPI program." *Life Partners, Inc.,* 87 F.3d at 544.

The court did not hold that the LPI contracts were not investment contracts because there was no common enterprise, but rather because the entrepreneurial efforts of LPI occurred before purchase, so that any expectation of profits did not arise from such efforts and *Howey*'s third prong was not satisfied. The court held that "pre-purchase services cannot by themselves suffice to make the profits of an investment arise predominately from the efforts of others, and ... ministerial functions should receive a good deal less weight than entrepreneurial activities." *Id.* at 548. The court then pro-·ceeded to emphasize that "[t]he SEC ... has identified no post-purchase service provided by LPI ... that could fairly be characterized as entrepreneurial," *id.,* a point that my colleagues underscore again here in their denial of rehearing by remarking on the absence of "even one entrepreneurial post-purchase service." Statement concurring in denial of rehearing at 589. It seems clear, therefore, that in concluding that LPI's contracts are not securities the court did in fact adopt a bright-line rule to the effect that in order for an investment contract to count as a security the promoter must provide at least one entrepreneurial service after·purchase. Moreover, although my colleagues now admit that pre-purchase activities are important in the overall determination of whether the *Howey* test is met (presumably after some post-purchase activity has been identified), the

majority's original opinion, with its comment that "we doubt that pre-purchase activities should ever count for much," *Life Partners, Inc.*, 87 F.3d at 548 and its conclusion that the "undeniably essential" activities performed by LPI do not create a security because they occur prior to purchase, *id.* at 547–48, leaves the distinct impression that pre-purchase activities are largely irrelevant and never, by themselves, sufficient to support finding that a security exists.

As I stated in dissent, I continue to believe that the court's bright-line rule distinguishing between pre-investment and post-investment efforts is at odds with the Supreme Court's frequent remonstrance that courts should apply the securities laws flexibly to achieve the goal of investor protection. *See, e.g., Pinter v. Dahl,* 486 U.S. 622, 653, 108 S.Ct. 2063, 2081–82, 100 L.Ed.2d 658 (1988); *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). The new rule cannot but pose difficulties for enforcement of the securities laws. Investors in viatical settlements depend on viatical settlement brokers to provide accurate and honest assessments of an insured's health as well as of the likelihood of medical developments occurring that might extend the insured's life expectancy. *See* David W. Dunlap, *Recalculating Death–Benefit Math: AIDS Progress Alters an Industry,* N.Y. Times, July 30, 1996, at D1. Moreover, the viatical settlement industry has grown tremendously in recent years, and is in the process right now of expanding from AIDS to other terminal illnesses. A further spur to the industry's growth is the recently enacted Kennedy–Kassebaum bill, which made the income from sale of insurance policies not taxable. *See* Arthur Allen, *The Invisible Hand: Greed, Ethics and the New Value of Dying,* Wash. Post, Nov. 17, 1996, Magazine, at 12; Dunlap, *supra,* at D1, D4. The panel's decision prevents the SEC from protecting investors in these viatical settlements from dishonest and unscrupulous profiteers. And while it is true, as my colleagues point out, that interests in mortgage pools or commercial real estate (familiar examples of asset-backed investments) would likely qualify as securities even under their test, because of the post-purchase entrepreneurial and managerial ac-

tivities required to make these investments succeed, it is not difficult to conjure up instances where their rigid "before-or-after" measuring stick would result in exempting the sale of other risky asset-backed interests from the scope of the securities laws. One example is a promoter selling interests in a package of long-term bonds, where the realization of profits turns on the promoter's skill in selecting what bonds to purchase; another is a dealer organizing a complex set of derivative transactions for a group of investors, where realization of profits depends predominantly on the dealer's expertise in balancing positions in different markets. In any event, the SEC's understandable reluctance to identify arrangements that it will acknowledge in advance as falling outside of the securities laws if the court's bright-line rule stays does not mean that its basic concerns are "overblown." As the Supreme Court has remarked, the importance of retaining flexibility in the definition of a security is so that our securities laws are "capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey,* 328 U.S. at 299, 66 S.Ct. at 1103. Experience shows that the novelty and ingenuity of exploitative investment schemes can rarely be contemplated ahead of time.

Because the panel's decision is inconsistent with Supreme Court precedent and holds the potential for obstructing enforcement of the nation's securities laws, I believe the panel's opinion merits review by the full court and should be reversed. I therefore dissent from the court's decision to deny rehearing or rehearing *in banc.*